IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 06-cv-01024-MSK-BNB

CHRIS PAPPAS, and
JAMELLA PAPPAS,

        Plaintiffs,

v.

FRANK AZAR & ASSOCIATES, P.C., a Colorado Professional Corporation, and
LISA M. HUNGERFORD,

        Defendants.

---

**OPINION AND ORDER DENYING MOTIONS TO STAY, MOTION TO SEAL,
AND OBJECTIONS TO MAGISTRATE JUDGE RULINGS**

---

**THIS MATTER** comes before the Court pursuant to the Defendants' Motion to

Bifurcate and Stay Discovery **(# 40)**, the Plaintiffs' response **(# 42)**, and the Defendants' reply

**(#44)**; the Defendants' Objections **(# 64)** to the January 18, 2007 Order **(# 55)**[1] of United States

Magistrate Judge Boyd N. Boland granting, in part, the Plaintiffs' Motion to Compel **(# 37)** and

denying, in part, the Defendants' Motion for a Protective Order **(# 48)**, the Plaintiffs' response

**(#75)**, and the Defendants' reply **(# 82)**; the Defendants' Second Motion to Stay **(# 65)**, the

Plaintiffs' response **(# 72)**, and the Defendants' reply **(# 79)**; the Plaintiffs' Motion to Seal **(#118)**;

and Plaintiff Frank Azar & Associates, P.C.'s ("Azar") Objections **(# 129)** to the April 9, 2007

---

[1]The Defendants' Objections are incorrectly linked in the Court's Electronic Case Filing
System to Docket # 57.  That document is a minute order by Magistrate Judge Boland directing
the filing of a response to a motion and setting a hearing.

1

Order (**# 116**) of Magistrate Judge Boland granting, in part, the Plaintiffs' Motion to Compel (**# 50**), and the Plaintiffs' response (**# 138**).

## FACTS

According to the Complaint (**# 1**), on December 6, 2002, the Plaintiffs were injured in an auto accident.  Responding to television ads by Azar that promoted the firm's aggressive prosecution of auto accident lawsuits, the Plaintiffs retained Azar to represent them in a suit against the driver and owner of the other vehicle in the collision.  Azar assigned the Plaintiffs' case to Defendant Hungerford, one of Azar's staff of attorneys, to litigate.  Despite initially assessing that the Plaintiffs had more than $ 200,000 in economic damages, in June 2005, Defendant Hugerford "pressure[d]" the Plaintiffs to accept a settlement of $ 45,000 with the driver of the vehicle, while retaining the ability to continue to sue the owner.   The Plaintiffs initially agreed to settle with the driver, but later advised Defendant Hungerford that they had changed their minds and no longer wished to settle.  Defendant Hungerford advised the Plaintiffs that they could not withdraw their agreement to settle, and on July 11, 2005, tendered to the Plaintiffs a check and settlement agreement that included release language.  However, due to errors in the release language reviewed by Defendant Hungerford, the Plaintiffs released all potential claims arising from the accident, including claims against the owner of the vehicle and the driver's insurer.  The Plaintiffs further allege that, despite the representations in Azar's television commercials, the firm "churns" cases, pressuring its attorneys and clients to settle cases quickly and cheaply, rather than preparing the case for potential trial.

The Plaintiffs' Complaint asserts five claims: (i) breach of fiduciary duty against the Defendants, arising from the Defendants' encouragement that the Plaintiffs settle for less than the

value of their case, in favor of the Defendants' own financial interests; (ii) professional negligence, in that the representation provided by the Defendants was below the accepted standards of practice for attorneys; (iii) violation of the Colorado Consumer Protection Act ("CCPA"), in that Azar's television commercials misrepresent the quality of the services provided by Azar; (iv) fraudulent misrepresentation, in that Azar's advertising made false representations to the Plaintiffs and upon which the Plaintiffs relied; and (v) negligent misrepresentation, arising from unspecified representations by the Defendants.[2]

The parties have filed a variety of substantive and procedural motions, which the Court will address in the relevant potion of the analysis.

## ANALYSIS

### A.  Motion to Bifurcate and Stay

The Defendants move **(# 40)** to bifurcate trial of the advertising claims from the malpractice claims, contending that the two sets of claims turn on different issues and may result in confusion and prejudice at trial, and that success on the malpractice claims is a necessary predicate for the Plaintiffs to assert claims that Azar's advertising was deceptive.  The Defendants also argue that, once bifurcated, discovery on the advertising claims should be stayed so as to avoid needless expense should the jury return a verdict in favor of the Defendants on the malpractice claims.

Fed. R. Civ. P. 42(b) provides that "in furtherance of convenience or to avoid prejudice, or when separate trials are will be conducive to expedition and economy," the Court may

---

[2]Hereafter, the Court will refer to the first and second claims, collectively, as the "malpractice claims," and the third, fourth, and fifth claims, collectively, as the "advertising claims."

bifurcate claims into separate trials.  The Court finds that, contrary to the Defendants' arguments, considerations of convenience, expedition, and economy all favor a single trial of both types of claims.  The decision as to whether bifurcation is warranted is confined to the sound discretion of the trial court, unless prejudice or unfairness to a party will result from a grant or denial of bifucation.  *Angelo v. Armstrong World Industries, Inc.*, 11 F.3d 957, 964 (10th Cir. 1993).

Turning first to the question of whether bifurcation and a stay of discovery on the advertising claims would result in a more expeditious and economical resolution of the case, the Court finds that it clearly would not.  Was the Court to grant the relief requested by the Defendants, all pretrial development of the advertising claims would have to await a jury verdict on the malpractice claims.  Nearly all of the expenses of litigating this action would be multiplied – the parties would notice each other for depositions in both phases of the case, the Court would be required to conduct multiple pretrial conferences, two juries would be empaneled, and the time it takes to bring the case to verdict would be doubled. The Defendants argue that this risk of doubled expenses is outweighed by the fact that, if the jury rules for the Defendants on the malpractice claims, that verdict will effectively dispose of the advertising claims.  The Court finds this argument to be overly optimistic.  As described by the Plaintiffs, Azar's advertising promises much more than minimally competent representation.  The Plaintiffs contend that Azar promises that it "will aggressively help motor vehicle collision victims," that "clients will recover more money for their claims than they would if they were represented by other attorneys," and that clients will get "full value for their claims." *Docket* # 1 at ¶ 8.   A jury could reasonably find that although Azar's representation of the Plaintiffs fell within accepted professional standards, that representation did not live up to Azar's advertising's promise of aggressive representation that

4

would bring the Plaintiffs more money than other attorneys would have obtained, or that Azar's representation was competent but did not generate the "full value" of the Plaintiffs' claims. Accordingly, the Court rejects the Defendants' argument that expedition and economy can be obtained by bifurcation.

The Defendants' contention that a single trial will result in prejudice and confusion is also misplaced.  They argue that the jury will be "distract[ed]" from the malpractice claims by the focus on Azar's advertising, will cause the jury to focus on the irrelevant representations in the advertising when considering the competence of the services provided to the Plaintiffs, and may cause the jury to draw negative inferences about Azar because it advertises.  The Court finds that, to the extent that any risk of such prejudice to the Defendants actually exists, it can be cured by *voir dire* and proper limiting instructions to the jury.  The jury can be instructed that it should only consider the testimony of the relevant experts, and not rely on any promises made in advertisements, when determining whether the Defendants' representation fell within the range of professional competence.  The Court can certainly inquire during *voir dire* whether any potential juror would be influenced by Azar's decision to advertise its services, and instruct the jurors that such a decision should have no bearing on their evaluation of the evidence.  Thus, the Court finds that the Defendants have not shown that a single trial of all claims will result in such prejudice that bifurcation is required.

Accordingly, the Defendants' Motion to Bifurcate and Stay Discovery is denied.  This same reasoning, coupled with that set forth *infra* with regard to the Defendants' Objections to the Magistrate Judge's January 19, 2007 Order, also warrants the denial of the Defendants' Second Motion to Stay **(# 65)**.

### B.  Objections to Magistrate Judge's Orders

On January 19, 2007, Magistrate Judge Boland entered an Order **(# 55)** granting the Plaintiffs' Motion to Compel **(# 37)** the Defendants' responses to certain interrogatories and requests for production.  In general, the requests for production sought information relating to Defendant Hungerford's revenue and salary, and the overall income and expenses of Azar for a year preceding the settlement of the Plaintiffs' case.  The interrogatories requested similar information, as well as information relating to the amount spent by Azar on advertising and the number of cases handled by Azar's Colorado Springs office.

The Defendants filed timely objections **(# 64)** to the Order, alleging that the requested information was not relevant and was confidential.  As to the relevance issue, the Defendants argue that the requested information has no bearing on the malpractice claims, and contend that, to the extent that the requests have relevance to the advertising claims, such discovery should be prohibited until the Court rules on the Motion to Bifurcate.  As to confidentiality, the Defendants argue that the details of Azar's finances and case load are "trade secrets" under Colorado law. With regard to the requests relating to Defendant Hungerford's compensation, the Defendants contend that such discovery is irrelevant to the Plaintiffs' malpractice claims, and argue that Defendant Hungerford's right to privacy in her financial information overcomes any interest by the Plaintiffs in discovering such information.

Rulings on non-dispositive issues by a Magistrate Judge are reviewed by this Court pursuant to Fed. R. Civ. P. 72(a), and will be reversed only if they are "clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A); *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997); *Ariza v. U.S. West Communications, Inc.*, 167 F.R.D. 131, 133 (D. Colo. 1996).

6

Accordingly, the Plaintiff's Objections will be overruled unless the Court finds that the Magistrate Judge abused his discretion or, if after viewing the record as a whole, the Court is left with a "definite and firm conviction that a mistake has been made." *Ariza,* 167 F.R.D. at 133, *citing Ocelot Oil Corp. v. Sparrow Indus.,* 847 F.2d 1458, 1464 (10th Cir.1988).

The Court finds that the Magistrate Judge's Order is neither clearly erroneous nor contrary to law. The bulk of the Defendants' arguments that the requested discovery is not relevant is predicated on an assumption that the Motion to Bifurcate would be granted, and that discovery would only be conducted with regard to the malpractice claim. Admittedly, the requested discovery has no apparent relevance to the malpractice claims, but as the Defendants acknowledge, the information has an arguable relevance to the advertising claims.[3] Specifically, the Plaintiffs have alleged that Azar requires a large cash flow to support its advertising, and that as a result, it pressures its attorneys and clients to settle cases quickly. *Docket* # 1, ¶ 9-15. The Magistrate Judge's conclusion that information regarding Azar's revenues, expenses, and case load might lead to the discovery of admissible evidence on the advertising claims was not clearly erroneous or contrary to law.

Azar also argues that its financial information is a trade secret and confidential under Colorado law. Even assuming this is correct, neither Colorado nor Federal law automatically shields such information from discovery simply by virtue of it being confidential or a trade secret.

---

[3]The Defendants' argument that the requested information is irrelevant to the advertising claims is insufficiently specific to preserve the issue for consideration by this Court. The entirety of the Defendants' argument on this point is a passing comment that the Defendants do not concede that the requested information would be relevant. *Docket* # 64 at 6-7. Such an ambiguous assertion does not adequately present the Defendants' position as to why the requested information is not relevant to the advertising claims.

Indeed, Colorado law expressly contemplates that a court "shall preserve the secrecy of an alleged trade secret by reasonable means," such as entering protective orders or sealing certain records, C.R.S. § 7-74-106; it does not simply declare such information non-discoverable. Similarly, Fed. R. Civ. P. 26(c)(7) provides that the Court may enter an order "that a trade secret . . . not be revealed or be revealed only in a designated way." Thus, contrary to the Defendants' apparent suggestion that the requested information is not discoverable because it is confidential and a trade secret, both Colorado and Federal law contemplate that such material may be discoverable, particularly when accompanied by collateral orders designed to preserve its confidentiality and limit its dissemination. Accordingly, the Magistrate Judge's Order was not "contrary to law" in deeming the requested information discoverable.[4]

Finally, the Court rejects Defendant Hungerford's arguments that her privacy interest in her financial information trumps the Plaintiffs' need for discovery of that information. The Defendants cite cases for the proposition that "where the right to privacy is implicated, the court must balance the needs of the party seeking relevant protected information against the other party's right to privacy." *Docket # 64 at 10.* Such cases do not stand for the proposition that Defendant Hungerford's financial information is categorically exempt from discovery, nor do they argue that the Magistrate Judge either failed to balance Defendant Hungerford's privacy interests

---

[4]The Defendants' Objections do not address the efficacy of collateral orders the Magistrate Judge might enter to protect the confidentiality of the requested discovery. The Defendants make a passing comment that the Plaintiffs' attorneys "do business in the same market as the Azar Firm and could misuse the data for their commercial advantage." Assuming this to be an argument that no collateral order could preserve the secrecy of Azar's financial information from the Plaintiffs' counsel themselves, the Court finds the argument unpersuasive. The requested discovery is financial data "for the twelve months before the Plaintiffs' claim was settled." It is unlikely that financial information reflecting the revenues and expenses of Azar between July 2004 and July 2005 could confer any advantage on any other law firm competing with Azar today.

against the Plaintiffs' need for the information or argue that his weighing of that balance was clearly erroneous.

Accordingly, the Defendants' Objections to the Magistrate Judge's January 19, 2007 Order are overruled.

On April 9, 2007, the Magistrate Judge issued an Order (**# 116**) granting the Plaintiffs' Motion to Compel (**# 50**) Defendant Hungerford to respond to discovery requests relating to how her compensation with Azar was deemed earned and paid.  Azar – but not Defendant Hungerford – filed timely Objections (**# 129**) to this Order, arguing that "information concerning Ms. Hungerford's personal financial data, and the information concerning the Azar Firm's financial data is not subject to discovery."  It argues that the requested information is not relevant, both as a matter of fact and law.

The Court finds that the Magistrate Judge's finding that the information was sufficiently relevant was not clearly erroneous.  The Plaintiffs have alleged that Azar sets income quotas for attorneys to meet each month, and exerts pressure on attorneys to meet those quotas or risk termination.  Under these circumstances, the Magistrate Judge's finding that information relating to the Azar's compensation policies with respect to Defendant Hungerford was relevant and discoverable was not clearly erroneous.

Azar argues that, as a matter of law, "a defendant's financial status is irrelevant and such information is neither admissible nor is it reasonable calculated to lead to the discovery of admissible evidence at trial.  *Citing Leidholt v. District Court*, 619 P.2d 768 (Colo. 1980) *and Corbetta v. Albertson's Inc.*, 975 P.2d 718 (Colo. 1999).  Even assuming that cases interpreting the Colorado Rules of Civil Procedure are somehow relevant to this case, the Court finds that

Azar overstates the holdings of those cases.  Both cases involved plaintiff seeking discovery of the defendants' financial information predicated solely upon the argument that such information was relevant to the plaintiff's demand for punitive damages.[5]  Neither case purports to stand for the proposition that Azar asserts– that financial information that is otherwise relevant to the substantive claims in the case is nevertheless insulated from discovery, simply by virtue of it being financial information.  Indeed, Azar notes that in *Crowe v. Tull*, 126 P.3d 196, 211 (Colo. 2006), a case involving nearly identical claims against Azar under the CCPA, the Colorado Supreme Court observed that discovery of Azar's "advertising and marketing practices" and information regarding "its operations and practices in serving past clients" was discoverable.  Azar argues here that *Crowe* "does not provide justification to seek this same information from Ms. Hungerford in this case," but fails to explain further.  This Court finds that *Crowe* clearly suggests that the discovery ordered by the Magistrate Judge here – discovery as to Azar's "operations and practices" – is appropriate on the CCPA claim asserted here.

Accordingly, Azar's Objections to the Magistrate Judge's April 9, 2007 Order are overruled.

---

[5]*Leidholt* held that, before a party could obtain discovery of its opponent's financial condition to support a request for punitive damages, the party must first make a *prima facie* showing of liability sufficient to support an award of such damages.  619 P.2d at 770.  *Corbetta* effectively overruled *Leidholt*, finding that a 1986 statute barring consideration of a defendant's net worth for purposes of awarding punitive damages prevented discovery requests for financial information predicated upon a claim seeking punitive damages.

### C.  Motion to Seal

The Plaintiffs move to seal (# 118) the entirety of their response (# 119) to the

Defendants' Motion for Summary Judgment.  The sole reason given by the Plaintiffs is that the

response and attached exhibits "contain some information which is confidential in nature and, as

such, should be sealed."  The Motion does not describe in detail what information is

deemed"confidential."

The Supreme Court has acknowledged a common-law right of the public to access judicial

records. *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597 (1978).  This right is

premised upon the recognition that public monitoring of the courts fosters important values such

as respect for the legal system.  *See In re Providence Journal Co.*, 293 F.3d 1, 9 (1st Cir. 2002).

Judges have a responsibility to avoid secrecy in court proceedings because "secret court

proceedings are anathema to a free society."  *M.M. v. Zavaras*, 939 F. Supp. 799, 801 (D. Colo.

1996).

There is a presumption that documents essential to the judicial process are to be available

to the public, but they may be sealed when the public's right of access is outweighed by interests

which favor nondisclosure.  *See United States v. McVeigh*, 119 F.3d 806, 811 (10th Cir. 1997).

It is within the district court's discretion to determine whether a particular court document should

be sealed.  *See Nixon,* 435 U.S at 599.  Only in the rarest of cases is the sealing of documents

appropriate – for example, cases involving intensely personal issues such as abortion or birth

control, or cases pertaining to the welfare of abandoned or illegitimate children.  *See Doe v.

F.B.I.*, 218 F.R.D. 256, 259 (D. Colo. 2003).  In furtherance of the common law right of access

to court records, the United States District Court for the District of Colorado promulgated

11

D.C.COLO.LCivR 7.2, which provides for sealing of documents only upon a showing of "compelling reasons." Such a showing is required to ensure public confidence in the judicial process. It is critical that the public be able to review the factual basis of this Court's decisions and evaluate the Court's rationale so that it may be confident that the Court is functioning as a neutral arbiter. *Cf. McVeigh*, 119 F.3d at 814.

The fact that the parties may agree that a particular document is confidential is irrelevant. As participants in what is a presumptively public form of dispute resolution, the parties are not free to merely agree among themselves to shield certain material from public review. To hold otherwise would permit parties, by agreement, to routinely subvert the public nature of the judicial system. Moreover, the fact that the parties may have entered into and obtained approval of a general protective order governing disclosure of information during discovery is not dispositive. Parties may freely agree to restrict their behavior via a protective order as it relates to the conduct of discovery, as such discovery is not generally filed with the Court and this, is not otherwise available for public review. However, once the parties file documents with the Court – presumably, because the contents of such documents bear on whether relief should be granted or not – the parties' agreements as to privacy will often be required to yield to the public's interest in reviewing the correctness and fairness of the Court's decisions. Only in circumstances where the parties' need for secrecy is so compelling, relative to the public's interest in access to the factual underpinnings of the Court's decisions, that sealing will be permitted.

Here, the Plaintiffs offer no compelling rationale sealing the entirety of their summary judgment response, much less any particular document or exhibit, other than citing to the parties' pending request for entry of a stipulated Protective Order. For the reasons stated above, the

12

Court finds that, even if the Protective Order were entered,[6] it would not, of itself, constitute compelling justification for sealing the documents.  Accordingly, the Motion to Seal is denied.

However, the Court is also mindful of the fact that the parties believe that public disclosure of the contents of the documents might prove harmful, and that faced with the choice between relying on the documents but making them available to the public, or keeping them private but forfeiting the opportunity to have the Court consider their contents, the parties might choose the latter.  Thus, if the parties contend that there is a compelling reason to seal some portion of the information associated with the Response to the Motion for Summary Judgment, they shall, within 14 days of this Order: (i) file a new Motion to Seal with respect to their summary judgment response, identifying, with specificity those statements in the brief and exhibits which the parties contend are confidential, and, with regard to the considerations discussed above, showing compelling reasons why such statements or exhibits should be sealed[7]; or (ii) withdraw the response, thereby eliminating any public interest in its contents.  Should the Plaintiffs  take neither action within the time specified, the Clerk shall unseal Docket # 119.

---

[6]By Order (# 149) dated May 22, 2007, the Magistrate Judge denied, without prejudice, the parties proposed Protective Order.

[7]By definition, such a showing must demonstrate why the parties cannot effectively redact the confidential material and/or stipulate to facts that obviate the need to file the confidential material.

13

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Bifurcate and Stay Discovery **(# 40)** is **DENIED**. The Defendants' Objections **(# 64)**[8] to the January 18, 2007 Order **(# 55)** of United States Magistrate Judge Boyd N. Boland are **OVERRULED**, and the Magistrate Judge's Order is **AFFIRMED**. The Defendants' Second Motion to Stay **(# 65)** is **DENIED**. The Plaintiffs' Motion to Seal **(# 118)** is **DENIED** without prejudice. After the expiration of 14 days of this Order, the Clerk of the Court shall unseal Docket # 119 unless the parties take action as set forth herein. Azar's Objections **(# 129)** to the April 9, 2007 Order **(# 116)** of Magistrate Judge Boland are **OVERRULED**, and the Magistrate Judge's Order is **AFFIRMED**.

Dated this 25th day of May, 2007

BY THE COURT:

Marcia S. Krieger
United States District Judge

---

[8] The Clerk of the Court shall correct the linkage of this docket entry to reflect its connection to Docket # 55, not Docket # 57.

14