IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 06-cv-01024-MSK-BNB

CHRIS PAPPAS, and
JAMELLA PAPPAS,

      Plaintiffs,

v.

FRANK AZAR & ASSOCIATES, P.C., a Colorado Professional Corporation, and
LISA M. HUNGERFORD,

      Defendants.

---

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT AND MOTIONS FOR SANCTIONS

---

**THIS MATTER** comes before the Court pursuant to the Defendant Frank Azar &

Assocs., P.C.'s ("Azar") Motion for Partial Summary Judgment (**# 67**), and the Plaintiffs'

response (**# 122**); the Plaintiffs' Motion for Sanctions (**# 85**), and Azar's response (**# 95**); the

Plaintiffs' Motion for Partial Summary Judgment (**# 111**), Azar's response (**# 131**), and the

Plaintiffs' reply (**# 143**); Azar's Motion to Enforce (**# 164**) a confidentiality agreement regarding a

deposition, the Plaintiffs' response (**# 182**, as supplemented **# 190**), and Azar's reply (**# 197**); the

Plaintiffs' Renewed Motion for Sanctions (**# 169**), Azar's response (**# 175**), and the Plaintiffs'

reply (**# 185**); Azar's Motion to Seal (**# 171**) certain portions of the Plaintiffs' response to the

Defendants' Motion for Summary Judgment; non-party Sherry Rawlings' Motion for a Protective

Order (**# 172**, as supplemented **# 179**), and Azar's response (**# 193**); the Plaintiffs' Motion for

Contempt against non-party Rodney Bridges (**# 176**), and Defendant Hungerford's response (**# 198**); the Plaintiffs' Motion to Seal (**# 184**) their reply to their Renewed Motion for Sanctions; Azar's Motion to Compel deposition testimony from non-party Mary Shields (**# 191**), the Plaintiffs' response (**# 209**), and Azar's reply (**# 214**); Azar's Motion for Sanctions (**# 203**), the Plaintiffs' response (**# 212**), and Azar's reply (**# 219**); Defendant Hungerford's Motion for Sanctions (**# 206**); Defendant Hungerford's Motion to Exceed Page Limits (**# 207**), the Plaintiffs' Motion to Seal (**# 211**), and Azar's Motion for Leave to Exceed Page Limits (**# 218**).[1]

## FACTS

Although the relevant facts will be discussed more fully herein as may be relevant to the pending motions, in summary, the Plaintiffs' Complaint alleges that the Plaintiffs were injured in an auto accident in December 2002.  Induced by television ads by Azar, the Plaintiffs retained Azar to represent them in a lawsuit against both the driver and owner of the other vehicle involved in the accident.  The Plaintiffs allege that, rather than diligently pursuing cases, attorneys at Azar are heavily pressured to settle cases quickly and cheaply, and to devote little time to fully developing a case for trial.

The Plaintiffs contend that although Azar initially valued their case at more than $240,000 in economic damages, Defendant Hungerford, the Azar attorney assigned to the Plaintiffs' case, recommended that the Plaintiffs accept a settlement offer from the driver in the amount of $ 45,000.  Defendant Hungerford insisted that the Plaintiffs could still pursue claims against the owner of the vehicle, despite accepting the settlement from the driver.  The Plaintiffs initially

---

[1]To the extent that any of these motions are referred to the Magistrate Judge, the Court hereby withdraws that reference.

agreed to the settlement offer, but then changed their minds, only to be told by Defendant

Hungerford that they could not withdraw their acceptance of the offer.  Contrary to Defendant

Hungerford's prior representations, the Release of Claims that Defendant Hungerford gave the

Plaintiffs to sign as part of the settlement with the driver also released any claims by the Plaintiffs

against the owner of the car, depriving the Plaintiffs of the ability to collect on a $200,000 default

judgment they obtained against the owner.  Moreover, because Defendant Hungerford did not get

permission to settle from the Plaintiffs' own auto insurer, the Plaintiffs contend that they are

barred from pursuing an uninsured motorist claim against their own insurer.

The Plaintiffs' complaint alleges five causes of action: (i) breach of fiduciary duty,

apparently against both Defendants; (ii) professional negligence, apparently against both

Defendants; (iii) violation of the Colorado Consumer Protection Act, C.R.S. § 6-1-101 *et seq.*,

apparently against Azar only, arising from Azar's allegedly deceptive television advertisemsents;

(iv) fraudulent mispresentation, apparently against Azar only, arising from unspecified

misrepresentations made by Azar as part of its advertising; and (v) negligent misrepresentation,

apparently against both Defendants, based on unspecified misrepresentations made to the

Plaintiffs.

As is evident from the Docket Sheet, this litigation has been extraordinarily contentious,

and both parties have filed numerous substantive and collateral motions.  The Court will address

the content of each motion as part of its analysis thereupon.

## ANALYSIS

**A.  Motions for Partial Summary Judgment**

Both the Plaintiffs and Azar have filed motions seeking summary judgment on some of the

claims herein.  Azar's motion **(# 67)** seeks judgment on: (i) the Plaintiffs' claim under the

Colorado Consumer Protection Act, on the grounds that the Plaintiffs cannot show that Azar

engaged in a deceptive trade practice because Azar's advertisements are not materially

misleading; (ii) the Plaintiffs' fraudulent misrepresentation claim, on the grounds that the Plaintiffs

cannot show a material misrepresentation made by Azar; and (iii) the Plaintiffs' negligent

misrepresentation claim, on similar grounds.  The Plaintiffs' motion **(# 111)** seeks judgment on the

Plaintiffs' claim for breach of fiduciary duty, based on the Defendants' demand that the Plaintiffs'

produce a $10,000 retainer fee if they refused to accept the settlement offer, contrary to the

original fee agreement that the Plaintiffs signed.[2]

1.  Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if

no trial is necessary.  *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).

Summary adjudication is authorized when there is no genuine dispute as to any material fact and a

party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Substantive law governs

what facts are material and what issues must be determined.  It also specifies the elements that

must be proved for a given claim or defense, sets the standard of proof and identifies the party

with the burden of proof.  *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986);

---

[2]The Plaintiffs' motion in no way complies with this Court's formatting requirements for
summary judgment motions.  MSK Practice Standards (Civil), § V.H.3.

*Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989).  A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party.  *See Anderson*, 477 U.S. at 248.  When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial.  *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence.  *See* Fed. R. Civ. P. 56(e).  Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute.  *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999).  If there is a genuine dispute as to a material fact, a trial is required.  If there is no genuine dispute as to any material fact, no trial is required.  The court then applies the law to the undisputed facts and  enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove.  If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required.  If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

When the facts are undisputed, the Court can enter judgment for either party as compelled by the law.  *See* Wright & Miller, Federal Practice & Procedure, § 2720 ("[S]ummary

judgment may be rendered in favor of the opposing party even though the opponent has made no formal cross-motion under Rule 56.").

      2. <u>Azar's motion</u>

Although Azar's motion seeks judgment on three separate claims, it contends that all three claims fail for essentially the same reason: that the Plaintiffs cannot show that Azar's television advertising is materially misleading.

The Plaintiffs' initial response[3] to this motion is a paragraph stating that "Magistrate Judge Borchers (sic) has ordered [Azar's] business practices and financial information be provided to Plaintiffs. . .  Plaintiffs have not received this discovery and are at a significant disadvantage in responding to the Motion. . . Plaintiffs would request the Court delay ruling on the Defendant's Motion . . . until Plaintiffs receive the requested discovery and Plaintiffs can supplement this response."

Fed. R. Civ. P. 56(f) provides that "Should it appear from the affidavits of a party opposing the motion that the party cannot, for reasons stated, present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had." The Court should grant relief under Rule 56(f) liberally. *Jensen v. Redevelopment Agency of Sandy City*, 998 F.2d 1550, 1554-55 (10th Cir. 1993).  However, the mere assertion by the non-movant that more discovery is needed is insufficient to properly invoke Rule 56(f).  By its own terms, a request under Rule 56(f) must be made by an affidavit, stating reasons why the party

---

[3]Like the Plaintiffs' own motion for summary judgment, the Plaintiffs' response to Azar's motion does not comply with the Court's Practice Standards.

is unable to present facts to oppose summary judgment.  That affidavit must do more than simply

allege that discovery has not been completed, or that specific facts are unavailable to the affiant.

*Id.* at 1555.  Rather, the affiant must show how the additional time requested will enable him to

rebut the movant's allegations that no issue of fact exists.  *Id.*   To do so, the affiant should

identify the specific facts sought to be obtained and what steps the affiant has already made to

obtain them.  *Committee for the First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th

Cir.1992).

The Plaintiffs did not submit any affidavit in conjunction with their summary judgment

response, and for this reason alone, relief under Rule 56(f)is not available.  Even assuming that the

Court were to treat the discussion contained in the Plaintiffs' response as the functional equivalent

of a Rule 56(f) affidavit– which this Court declines to do– it would still be insufficient.  For

example, the discussion in the Plaintiff's brief does not "identify the specific facts sought to be

obtained," nor, for reasons that will become clear in the following analysis, do the Plaintiffs

identify evidence they intend to discover that will allow them to survive summary judgment.

Moreover, the Court notes that it resolved the Objections to the Magistrate Judge's discovery

orders on May 25, 2007 **(# 151)**, and to date, the Plaintiffs have not filed any supplemental

response incorporating the discovery they were awaiting at the time of their response.

Accordingly, the Court declines to postpone consideration of the motion for summary judgment

based on the Plaintiff's claim that discovery has not yet been completed.

Assessing the substantive portion of the Plaintiffs' response is difficult, largely because the

Plaintiffs' response does not follow the Court's Practice Standards, and because it does not

directly address the limited scope of the issues raised by Azar.  Among other things, the first four

pages of the Plaintiffs' response simply iterates some of the allegations in the Complaint, while pages 5-9 repeat the remaining factual allegations of the Complaint, all of which are asserted without citation to evidence in the record.  Pages 9-16 recite and discuss the elements of each of the three challenged claims, even though Azar's motion challenges a single, effectively common, element of all three claims.  It is not until page 18 of the response that the Plaintiffs begin to address "Evidence Supporting Plaintiffs' Claims," and the remainder of the response consists largely of summaries of the evidence obtained from each witness, with very little analysis addressing the relevance of that evidence to the issue herein.

As best the Court can determine, the Plaintiffs contend that Azar made the allegedly deceptive and fraudulent representations in the course of his advertising.[4]  The Plaintiffs do not specifically identify any particular representation made by Azar's advertising as being false; the Plaintiff merely attaches transcripts[5] of several Azar advertisements, stating that "[t]hese ads clearly represent to the public that Azar Law Firm will get full recovery for its clients and a client will quickly receive all the money he or she deserves." (Emphasis in original.)  When faced with a motion for summary judgment, a party with the burden of proof may not simply rest on assertions contained within his pleadings or rely upon general representations of what the evidence shows; it

---

[4]The Plaintiffs contend that Defendant Hungerford made negligent misrepresentations as to the effect of the settlement, but Defendant Hungerford has not moved for summary judgment on this claim, and the Plaintiffs offer no argument as to why Azar should be held liable for Defendant Hungerford's representations.

[5]The Plaintiffs have not submitted an affidavit indicating the foundational facts necessary to support the admission of the transcript – *e.g.* the date and time which the transcribed ads were recorded; the medium in which they were broadcast; and the accuracy of the transcription, among other things.  However, Azar has not objected to the Court's consideration of the transcript, and thus, the Court receives it for purposes of this motion.

must come forward by adducing <u>specific</u> facts supporting the claim, and identify those facts by reference to affidavits, deposition transcripts, or specific exhibits. *BancOklahoma Mort. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1097 (10th Cir. 1999); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). Where the burdened party makes only generalized factual assertions and cites unspecifically to supporting evidence, the Court may, but is not required to, independently search through the exhibits for specific evidence supporting the movant's contentions. *Adler*, 144 F.3d at 672 ("The district court has discretion to go beyond the referenced portions of these materials, but is not required to do so"). However, the Court must be mindful of its neutral role in the litigation process, and should be "wary of becoming advocates who comb the record of previously available evidence and make a party's case for it." *Id.*

Here, the Court declines to affirmatively comb the record in search of potential misrepresentations, and will instead focus solely upon ascertaining whether, and to what extent, the transcribed advertisements make assertions that are similar to those described by the Plaintiffs' response. Specifically, the Plaintiffs argue that Azar's ads state that Azar "will get full recovery for its clients," and that the client "will . . .receive all the money he or she deserves." The Court finds that Exhibit 11 includes portions in which the principal of Azar states "I'll work hard to get you every dollar you deserve" and "I'll get you as much as I can as fast as I can." These are the only representations like those alleged by the Plaintiff that can be found in the record, and thus, the only representations that the Court will assess.

The Colorado Consumer Protection Act ("CCPA") prohibits a wide variety of "deceptive" trade practices.[6]  C.R.S. § 6-1-105(1)(a)-(bbb).  In *Park Rise Homeowners Assn. v. Resource Construction Co.*, 155 P.3d 427, 434-36 (Colo. App. 2006), the Colorado Court of Appeals explained at length that the CCPA distinguishes between "puffery" – the seller's own "expression of an exaggerated opinion" of its goods or services – and representations "made with the purpose of having them accepted as fact," the latter being actionable under the CCPA while the former are not.  In that case, the plaintiffs alleged that the defendant builder had represented its products as demonstrating "quality construction," when, in fact, the buildings were poorly made.  Conceding that there is no "bright line test to distinguish puffery from a deceptive trade practice," the court attempted to determine whether the representation of "quality construction" constituted "general statements of opinion" or "specific representations of fact."  *Id.* at 435.  It concluded that a promise of "quality construction" represents "a statement of opinion, the meaning of which would depend on the speaker's frame of reference, such as mass produced housing versus a custom built home.  It is not a specific representation of fact subject to measure or calibration."  *Id.* at 436.

A similar conclusion is warranted here.  A simple parsing of both assertions from Azar's ads reveals that Azar's promise to "work hard," to get the client "every dollar they deserve," and to get "as much as I can as fast as I can" are, at best, statements of Azar's general opinion as to the value of its services.  By their very nature, these representations are inherently matters of opinion; one cannot contend that these are representations of fact because there is no "measure or

---

[6]The Plaintiffs' response does not identify the particular type of deceptive practice they allege Azar to have engaged in; rather, the Plaintiffs coyly assert that "Many of the enumerated prohibited practice involve false or misleading representations with regard to the sale of goods or services."

calibration" by which one can objectively say that Azar did or did not "work hard" or that a client "deserve[s]" a specific amount of money.  Indeed, as in *Park Rise*, these are precisely the type of statements that depend upon understanding Azar's frame of reference for their meaning.  What Azar may consider to be "work[ing] hard" on behalf of many clients simultaneously may differ significantly from the amount of work that a single client will expect his or her lawyer to devote to the case; Azar's opinion of the amount of money a client "deserves" for a particular claim will often reflect a professional's detached (or, perhaps, "semi-detached") perspective on the case that differs from what the client might subjectively feel they deserve,[7] and will necessarily fluctuate over time as the case gains and loses strength; determining how much Azar "can" get for a client, and how quickly it can do so are matters that depend upon a full understanding of Azar's practice methods, caseload, etc. before any meaning can be ascribed to such a claim.  None of these statements are susceptible to an understanding that Azar was representing specific and demonstrable facts.

The Plaintiffs' brief does not actually contend that any aspect(s) of these statements are specifically false.  Instead, they imply that Azar's promises are disingenuous because Azar's attorneys are not experienced trial lawyers; because it rewarded or punished attorneys based on their satisfaction of monthly revenue targets; because the firm encouraged attorneys to settle cases

---

[7]Indeed, although the Defendants may have initially estimated the value of the Plaintiffs' case to be several hundred thousand dollars, the evidence is unrebutted that Defendant Hungerford believed the value of the case dropped precipitously during the Plaintiffs' depositions, when certain matters undercutting the Plaintiffs' credibility were revealed.  The Plaintiffs have not come forward with evidence to show that, at the time Defendant Hungerford recommended settlement, the Defendants did not actually believe that the Plaintiffs' case was worth anything more than the $45,000 settlement offer.  The fact that the Plaintiffs believe they were entitled to more merely illustrates the subjectivity of meaning that attaches to Azar's promise to get clients what they "deserve."

quickly and avoid trials; and so on.  The crux of the Plaintiffs' argument is that Azar "churns"

cases, pressuring its attorneys to quickly turnover cases via settlements for small amounts, rather

than diligently working cases in anticipation of trial.[8]  Assuming all of these facts to be true, none

of them are inherently inconsistent with the actual representations made by Azar's advertisements.

The mere fact that Azar placed a high priority on settling cases, and doing so as rapidly as

possible, does not necessarily mean that its assertions that it would "work hard" and "get as much

as [it] can" were false.  Indeed, settlement of cases quickly was one aspect of Azar's promise to

get "as much as [it] can, as fast as [it] can."  Although the Court can certainly understand the

Plaintiffs' frustrations if they believed that they were retaining an attorney who would strive

tirelessly to obtain for them as much as was conceivably possible, that is not what Azar's

advertisements promised.  The ads promised hard work, with the objective being to obtain the

maximum possible recovery in the minimum amount of time.  Although the Plaintiffs may

subjectively believe they were entitled to more, there is no objective indication that Azar did not

intend to, and did not, live up to any actionable promises its advertisements made.

Accordingly, the Court finds that the Plaintiffs have failed to come forward with evidence

to establish that Azar engaged in a deceptive trade practice in violation of the CCPA.

Turning to the Plaintiffs' claim for fraudulent misrepresentation, because the alleged

misrepresentations in Azar's adversiting constitute promises to do something in the future (to the

extent they constitute "promises" at all), the Plaintiffs must prove not only that Azar failed to

perform as promised, but also that it lacked the intention to perform at the time the promise was

---

[8]The unstated premise of the Plaintiffs' argument is that a case that is thoroughly prepared
for trial is likely to settle for more.

made. *Nelson v. Gas Research Institute*, 121 P.3d 340, 343 (Colo. App. 2005). For the reasons discussed above, the Court finds that Azar's advertisements, to the extent they made any promises whatsoever, were merely "puffery," not promises that can be support a claim for fraud. Moreover, even assuming that the Court were to find that Azar's advertisements were specific representations of fact, rather than mere puffery, the Plaintiffs have come forward with no evidence to suggest that, at the time Azar made these representations, it lacked the present intent to perform them. If anything, the very foundation of the Plaintiffs' theory of the case confirms that Azar did indeed intend to fulfill its promise to obtain a recovery for the Plaintiffs "as fast as [it] can," and the Plaintiffs have not come forward with evidence to suggest that, at the time Azar aired the advertisements, it did not intend to work hard to achieve a recovery for its clients, nor that it would endeavor to get those clients everything that Azar believed they deserved. Accordingly, Azar is entitled to summary judgment on the fraudulent misrepresentation claim as well.

To prove a claim for negligent misrepresentation under Colorado law, the Plaintiffs must show that Azar supplied them information to guide them in a transaction, that the information provided was false, that Azar failed to use reasonable care to ensure that the information was correct; that the Plaintiffs relied upon that information, and that they were damaged as a result. *Nelson*, 121 P.3d at 345; *Bedard v. Martin*, 100 P.3d 584, 592 (Colo. App. 2004). Notably, in a claim for negligent misrepresentation, the incorrect information must relate to a past or present fact. *Mehaffy, Rider, Windholz & Wilson v. Central Bank Denver*, 892 P.2d 230, 237 (Colo. 1995). Although it is conceivable that a claim can be premised upon a promise relating to future events, a plaintiff asserting such a claim must also show that the defendant lacked a present intent

13

to perform at the time the promise was made. *Id.* Moreover, expressions of opinion are not actionable. *Id.* For the same reasons stated above, the Plaintiffs have failed to establish that the alleged promises by Azar are anything more than statements of opinion, nor have they shown that Azar lacked a present intention to perform at the time those statements were made.

Thus, Azar is entitled to summary judgment on all three of the Plaintiffs' claims sounding in fraud or deception.

### 3. Plaintiffs' motion

The Plaintiffs' motion seeks summary judgment only on the issue of whether the Defendants breached an admitted fiduciary duty owed to the Plaintiffs. The Plaintiffs acknowledge that there are issues of fact with regard to causation and damages that preclude entry of judgment on the claim as a whole. As this Court's Practice Standards explain, "motions for partial summary judgment on some, but not all, legal theories arising from a single factual scenario are not favored unless" the judgment would be one subject to certification under Fed. R. Civ. P. 54(b) or would significantly reduce the amount of evidence to be presented at trial. MSK Practice Standard (Civil) § V.H.3.b.3. The Court notes that the same facts constituting the breaches that the Plaintiffs allege with regard to the fiduciary duty claim also underlie the professional negligence claim, which is not the subject of a summary judgment motion and will necessarily proceed to trial. Thus, there is no apparent utility in considering a summary judgment motion that seeks resolution of a single element of a single claim, but which does not decrease the amount of evidence that will be presented at trial in any event. For this reason alone, the Plaintiffs' motion is denied.

Moreover, the Court finds that there is a clear dispute of fact with regard to whether the Defendants breached their fiduciary duty to the Plaintiffs.  In response to the Plaintiffs' motion, the Defendants point to the report of their expert, Jean Dubofsky, who opines that the Defendants adequately discharged their professional obligations to the Plaintiffs.  The Plaintiffs contend in reply that the Court cannot consider the Dubofsky report because it is "not sworn," but the Plaintiffs cite to no authority (and the Court is aware of none) that requires an expert's report to be sworn.  The Plaintiff also argues that Dubofsky applied the wrong standard as to the scope of an attorney's fiduciary duty to a client, while their own experts applied the correct standard, but the Court has reviewed all three expert reports at issue and finds that none of the expert reports specifically describe the standard of care for attorneys that the expert was purporting to apply. Thus, the Court finds that Dubofsky's affidavit raises a genuine issue of fact with regard to whether the Defendants breached a fiduciary duty to the Plaintiffs, such that summary judgment on this claim is not appropriate.

## B.  Motions to Seal

Azar moves to seal (# 171) the Plaintiffs' response (# 119) to Azar's summary judgment motion, requesting that pages 18-37 of the Plaintiffs' brief, and Exhibits 4, 5, 8-10, 11, and 12 in support of that response be sealed.  Azar argues that these documents contain proprietary and confidential information, namely: "Azar's internal method of recognizing attorneys who have performed well"; "the authority of attorneys to reduce a contingent fee"'; "Azar's method of calculating the potential of a case"; "attorney compensation"; "the client intake process"; "Azar's process of engaging insurance companies on settlement discussions"; "the selection of advertising themes"; and, generally, "the inner workings of a prominent personal injury law firm."

15

The Plaintiffs move to seal (# 184) their reply (# 185) to their motion for sanctions against Azar. The sole grounds asserted for this motion is that the parties have agreed to a Protective Order regarding the material cited therein. Finally, the Plaintiffs move to seal (# 211) their response (# 212) to another motion for sanctions by Azar. The sole reason given for this motion is that "this document contains privileged information."

The Court's prior Order (# 151) of May 25, 2007 recites the applicable law governing sealing of court filings, and that discussion is deemed incorporated herein.

Turning first to Azar's motion to seal the Plaintiffs' summary judgment response, the Court has carefully reviewed all of the material sought to be sealed, and finds that Azar's interest in maintaining its confidentiality is minimal. Although the materials do contain information of the type described by Azar – *i.e.* information as to attorney compensation, the intake process, etc. – none of it reflects information that is particularly confidential . None of the office practices described therein are especially unique or proprietary; indeed, the documents at issue describe practices that are common in most law firms engaged in litigation. In addition, the information relating to attorney compensation is entirely historical, reflecting salaries and bonuses earned by Azar attorneys several years ago, and thus, would be of little value to Azar's competitors today.[9]

Moreover, the Court finds that there is some public interest in the information being available. Although the Court has found that this information does not demonstrate that Azar's

---

[9]Notably, some of the information sought to be sealed consists of testimony by attorneys formerly employed by Azar. Nothing in the record indicates that Azar and its former attorney employees entered into any form of confidentiality agreement that would preclude these witnesses from voluntarily revealing details of their former employment, if they so choose. The fact that Azar has not sought to secure this information from public disclosure by its former employees casts doubt on any claim by Azar that the information is nevertheless confidential.

advertising representations are false or deceptive, sealing the information would deprive the public of the opportunity to evaluate the merits of the Court's conclusion.[10]  Weighing this public interest against Azar's interest in maintaining confidentiality of the information, the Court finds that Azar's interests in privacy are outweighed by the public interest in transparency in the judicial process.  Accordingly, this motion to seal is denied.

The Plaintiffs' two motions to seal may be denied for simpler reasons.  In neither instance did the Plaintiffs articulate any grounds other than, at best, an agreement between the parties to seal the documents.  As the Court's prior Order makes clear, parties' agreements to keep discovery between themselves confidential does not constitute compelling cause for sealing documents that are later filed with the Court as part of the adjudicatory record.  In any event, the Court has reviewed the documents sought to be sealed, and finds nothing therein that would warrant sealing.[11]

### D.  Motions for Sanctions

---

[10]In this regard, Azar's motion's arguments that this case is "a private dispute between the parties" and that "to the extent that either party has a concern about the integrity of the judicial system, the right of appeal is available" entirely misses the point.  Unlike an arbitration privately agreed to and funded by the parties, a proceeding in court is the antithesis of "a private dispute."  The interest in preserving the integrity of the judicial process is not that of the parties – as Azar notes, their interests are protected by appellate rights – but rather, of the public, who finances the judicial system and has an interest in ensuring that it continues to operate fairly, efficiently, and objectively.

[11]At best, Docket # 212 does disclose some attorney-client communications between the Plaintiffs and Azar during the earlier lawsuit, but any such privilege regarding these communications was waived by the Plaintiffs as a result of bringing this suit.  This document also contains some specific assertions regarding Azar's business practices, but the Court notes that these assertions made by Plaintiffs' counsel, and are not supported by any attached evidence from Azar acknowledging such practices.

Both parties have somewhat shifted their focus from litigating the substantive issues in this case to seeking sanctions against one another, and against third-party witnesses.

The Plaintiffs move for sanctions **(# 85)** against Azar, alleging that Azar failed to comply with a January 18, 2007 Order **(# 55)** by the Magistrate Judge compelling the production of documents and answers to interrogatories.  The Magistrate Judge's Order directed that such discovery be provided by February 12, 2007.  On January 31, 2007, the Defendants filed timely Objections **(# 64)** to the Magistrate Judge's Order pursuant to Fed. R. Civ. P. 72(a).  Because it is clear that the filing of Objections under Rule 72(a) does not automatically stay the target discovery pursuant to D.C. Colo. L. Civ. R. 30.2, *see Esparza v. Bridgestone/Firestone, Inc.*, 200 F.R.D. 654, 656 (D. Colo. 2001), the Defendants simultaneously filed a Motion for Stay **(# 65)** seeking a stay of the Magistrate Judge's order directing production of the challenged discovery until this Court resolved the Defendants' Objections. Arguably, a motion to stay discovery pending resolution of Rule 72(a) Objections arises under Rule 26(c)(1) and (2), requesting that the challenged discovery "not be had," or that it be had "on specific terms and conditions," namely, after the Objections have been resolved.  Because the Defendants arguably presented a motion under Rule 26(c) along with their Objections, the automatic stay of Local Rule 30.2 applied.  The parties do not specifically address whether the stay contemplated by Local Rule 30.2 – "filing of a motion . . . shall stay the discovery to which the motion is directed until further order" – operates to stay the effect of a Magistrate Judge's Order specifically directing the

production of discovery by a certain date, and the Court assumes as much without specifically finding.[12]   Accordingly, the Plaintiffs' motion for sanctions on this issue is denied.

On June 18, 2007, the Plaintiffs filed a "Renewed Motion for Sanctions," (**# 169**), apparently relating to the same disputed discovery as the prior motion.  The "renewed motion" alleges that, notwithstanding this Court's May 25, 2007 Order (**# 151**) overruling the Defendants' Objections, the Defendants still had not produced the requested discovery.  The Defendants responded that the discovery was physically delivered to the Plaintiffs' co-counsel on June 15, 2007.  The Plaintiffs do not dispute that the documents were produced on June 15, 2007, but in reply, contend that the discovery responses are insufficient.  The Court has reviewed the Plaintiffs' arguments as to how the produced discovery falls short of what the Plaintiffs believe exists, or fails to reproduce the information in the form regularly kept by Azar.  Without specifically adjudicating those issues, the Court finds it sufficient to note that none of the defects raised by the Plaintiffs, had they been promptly corrected to the Plaintiffs' satisfaction, would have sufficed to prevent the entry of summary judgment against the Plaintiffs' on the claims directed at Azar's advertising.  The Plaintiffs failed to come forward with adequate evidence on these claims not because they lacked specific financial documentation from Azar, or lacked concrete proof of Azar's monthly billing targets for its attorneys.  Rather, summary judgment was granted for the more fundamental reason that the Plaintiffs identified only two entirely subjective

---

[12]Assuming that Local Rule 30.2 does not operate to vacate a Magistrate Judge's Order directing certain discovery, the Court would nevertheless find that no sanction is necessary under the factors set forth in *Ehrenhaus v. Reynolds*, 935 F.2d 916, 921 (10th Cir. 1992).  To the extent the non-disclosure prejudiced the Plaintiffs (and the Court does not necessarily find there was any), the Court finds that such prejudice is counterbalanced by the reasonable, good faith belief by the Defendants that their Motion to Stay tolled their duty to produce the requested discovery.

"misrepresentations" made in Azar's advertising, and that even if Azar did indeed "churn" cases in the manner suggested by the Plaintiffs, such conduct is not inherently inconsistent with the claims made in Azar's ads.  Accordingly, this motion for sanctions is denied.

The Plaintiffs also seek a contempt citation (**# 176**) against non-party witness Rodney Bridgers.  The motion alleges that Bridgers, a former Azar attorney, was deposed on January 2, 2007, but refused to answer questions about his salary during his employment with Azar.  The Plaintiffs moved to compel (**# 125**) Bridgers to answer these questions, and the Magistrate Judge granted (**# 149**) that motion.  The Plaintiffs re-deposed Bridgers on June 20, 2007, and allege that Bridgers continued to refuse to answer the questions.

Putting aside the Plaintiffs' motion's troubling silence on critical issues of Due Process, given that Bridgers is not a party to this action and apparently was not served with a copy of the Plaintiffs' motion, the Court merely notes that the Plaintiffs have not provided the Court with a transcript from either of Bridgers' depositions.  Without specific identification of: (i) the court order expressly directing that Bridgers undertake certain actions; and (ii) a factual record specifically demonstrating the manner in which Bridgers allegedly refused to take the required actions, the Court will not entertain a request for a finding of contempt.  This motion is denied without prejudice.

Azar also seeks sanctions.  On July 17, 2007, Azar moved for sanctions against the Plaintiffs (**# 203**), alleging "comprehensive discovery misconduct in this case."  Specifically, Azar alleges that Plaintiff Jamella Pappas falsely testified in interrogatory responses and a deposition in this case that she had not worked since 2003, and that Plaintiff Chris Pappas testified in a deposition in this case that they had not worked since the auto accident giving rise to the prior

lawsuit.[13]  Azar requests that this Court dismiss the case as a sanction for the Plaintiffs' perjury.

Defendant Hungerford filed a separate motion for sanctions (**# 206**), echoing the arguments of

Azar on this issue.

> In response, the Plaintiffs do not deny that Plaintiff Jemella Pappas falsely stated in her

interrogatory responses and her deposition that she was not currently working, and indeed admit

that her false testimony "was not justified."[14]  With regard to Plaintiff Chris Pappas' testimony,

the Plaintiffs contend that his passing comment that "We haven't worked . . . since the accident" –

a statement that is undeniably false –  reflects a "language difficulty" and that the falseness of that

statement was apparent because he had testified in the earlier litigation that he had worked as a

part-time cashier for several months after the accident.  The Court has reviewed the citations

provided by the Plaintiffs for the proposition that this reflected a "language difficulty" and finds

nothing therein to suggest that Plaintiff Chris Pappas was somehow confused or misunderstood

when he made the statement.  Indeed, the statement at issue concluded a lengthy answer

explaining the severity of the injuries that the Plaintiffs had suffered as a result of the accident, and

is entirely in context with the rest of that answer.  Moreover, the Court rejects any contention that

the falsity of Plaintiff Chris Pappas' deposition testimony was apparent.  For one thing, the

---

[13]Azar also alleges that it has since discovered that many of the representations made by the Plaintiffs in the original lawsuit were false, but any perjury committed by the Plaintiffs in that case is beyond the scope of this Court's jurisdiction over this action.

[14]The Plaintiffs go on to argue that Plaintiff Jemella Pappas lied because she feared that disclosing her current employment would cause the Defendants to contact her employer, which, in turn, would result in her losing the job.  She also contends that she "corrected" her deposition testimony two months later.  However, Azar's motion attaches the errata sheet showing the Plaintiff's corrections to her deposition, and no entry is made correcting the testimony in which she denies having worked anywhere since 2003.

"proof" of that falsity was testimony given in the underlying action, not this litigation.  Moreover, although the Plaintiffs are correct that Plaintiff Chris Pappas later testified that he had continued to work as a cashier for several months following the accident, that testimony makes no reference to Plaintiff Jemella Pappas' ability to work.  Although the inconsistency in Plaintiff Chris Pappas' testimony might have warranted further inquiry as to whether or not he was able to work, it does not put the Defendants on notice that Plaintiff Jemella Pappas' testimony about her own work history was also false.

Whether the authority arises under Fed. R. Civ. P. 37(c) or the Court's inherent power to protect the integrity of the judicial process, it is clear that this Court has the power to impose appropriate sanctions when a party makes affirmative misrepresentations of fact during discovery. *See e.g. Martin v. DaimlerChrysler Corp.*, 251 F.3d 691, 694 (8th Cir. 2001); *Combs v. Rockwell Intl. Corp.*, 927 F.2d 486, 488 (9th Cir. 1991).  In assessing what sanction should be  imposed, the Court applies the familiar *Ehrenhaus* factors.  *Ehrenhaus v. Reynolds*, 935 F.2d 916, 921 (10th Cir. 1992).  Specifically, the Court examines the degree of prejudice to the opposing party; the prejudice to the judicial system; the culpability of the litigant; whether the party was warned in advance of the offending conduct; and the efficacy of lesser sanctions.  *Id.*

Turning first to the prejudice to the Defendants, the Court finds that the Defendants were somewhat prejudiced by both Plaintiffs' statements, insofar as the Defendants were forced to investigate the Plaintiffs' claims of being unable to work, and were forced to depose Plaintiff Jemella Pappas' employer to reveal the falsity of her testimony.  Presumably, had the Plaintiffs testified truthfully about Plaintiff Jemella Pappas' employment, the Defendants might have relied

upon that testimony, or confirmed it by means of requesting production of wage statements or tax records, rather than having to separately depose the employer.

The Plaintiffs argue that the Defendants were not prejudiced at all, because the Plaintiffs' current employment status is of little relevance to this case, as the damages here spring from the value of the underlying lawsuit, not any current economic injury.  The Defendants respond, persuasively, that the measure of damages in a malpractice-type case is the value of the judgment that could have been obtained in the underlying lawsuit.  In that underlying lawsuit, Plaintiff Chris Pappas filed an affidavit setting forth the types of damages the Plaintiffs were seeking.  *See Docket* # 203-6.  Along with damages reflecting medical expenses and pain and suffering, the affidavit stated that the Plaintiffs had to sell off a business because they could not physically manage to work anymore; that the Plaintiffs had to "sell everything we own and are currently living off of my social security benefit check," and that because Plaintiff Chris Pappas could no longer work, the Plaintiffs lost their home in foreclosure.  Thus, it is abundantly clear that the extent to which the Plaintiffs have been able to work since the accident is a fact bearing directly on the value of the underlying claim, and thus, relevant to this action.  Therefore, the Court finds that the Plaintiffs' misrepresentations caused some prejudice to the Defendants.

The Court also finds that the Plaintiffs' false statements significantly prejudice the judicial system.  The integrity of the trial process relies heavily upon the honesty of witnesses and their willingness to abide by their oath.  Indeed, the criminalization of perjury attests to the importance that truthfulness plays in the judicial process.  A witness' decision to testify falsely, regardless of the reasons therefor, prejudices not only the fairness of the proceeding in which that testimony is given, but threatens to erode confidence in the judicial system as a whole.  Moreover, false

testimony, once revealed, engages the Court in distracting collateral proceedings such as these that drain the Court's resources without advancing the merits of the litigation, exacerbating the harm to the judicial system.  On the whole, the Court finds that the prejudice resulting from the Plaintiffs' false testimony is substantial.

The Court further finds that the Plaintiffs are entirely culpable for their conduct.  As the Plaintiffs admit, Plaintiff Jemella Pappas knowingly concealed her employment status in an attempt to prevent the Defendants from learning about and contacting her employer.  She does not assert that her false testimony was the result of mistake or confusion, and indeed, it could not have been, as the Plaintiff made the same false assertion as to her employment status both in her answers to interrogatories and her deposition.  The Plaintiffs contend that Plaintiff Chris Pappas' false statement was confused and an oblique assertion in response to an unrelated question.  The Court rejects any argument that the statement was somehow confused as a result of language difficulties, but acknowledges that the statement about the Plaintiffs' employment status was a gratuitous comment made in response to a question inquiring as to the reasons why the Plaintiffs were bringing the instant lawsuit.  In some respects, his answer that they haven't worked since the accident might be considered a bit of hyperbole underscoring the Plaintiffs' frustration as to the extent of and restrictions resulting from the Plaintiffs' physical injuries, or a figurative dramatization of the economic losses that they had experienced.  The Defendants have not expressly alleged that they relied upon this single statement by Plaintiff Chris Pappas to foreclose any further inquiry into the Plaintiffs' post-accident employment status, nor identify any other testimony that was given by Plaintiff Chris Pappas on the issue of employment. The Court is left with some degree of uncertainty as to precisely what weight the Defendants gave this particular

24

comment.  Thus, the Court finds that, although no one else bears any culpability for Plaintiff Chris Pappas' statement, Pappas himself is primarily, but not entirely, responsible for any misleading effects of that statement.[15]

The factor inquiring into whether the parties were previously advised of the risk of sanctions does not bear directly on these circumstances.  To the extent that a warning is required or desirable, the Court finds that the parties' oath sufficiently advises them of the need to answer truthfully.

The final factor – the efficacy of sanctions short of dismissal – requires a conscientious balancing of the foregoing findings, in addition to recognition of the totality of the circumstances The Court should invoke the severe sanction of dismissal only as a last resort, where no lesser sanctions could be effective.  *Gocolay v. New Mexico Fed. Savings & Loan Ass'n.*, 968 F.2d 1017, 1021 (10th Cir. 1992).  The Court finds that much of the prejudice to both the Defendant and the judicial system can be ameliorated without dismissing the case.  Turning first to the prejudice to the Defendant, the Court has found that such prejudice was primarily economic in nature.  Specifically, the Defendants were forced to expend funds to depose Plaintiff Jemella Pappas' employer, rather than being able to rely upon truthful testimony by her as to the details of her current employment.  Such prejudice can be cured by assessing the costs of deposing her employer against the Plaintiffs.

---

[15]The Plaintiffs argue that the Defendants themselves are guilty of many false statements in their own deposition testimony.  Leaving aside the logical fallacy of the *tu quoque* argument, the Court has some doubt that the quantum of "falsity" in the examples given from the Defendants' depositions is the equivalent of the patent falsehood of the Plaintiffs' testimony.  Nevertheless, to the extent the Plaintiffs nevertheless believe that this amounts to sanctionable conduct by the Defendants, they are free to file their own motion seeking such relief.

Within 10 days of the date of this Order, the parties shall confer in an attempt to agree upon the costs and reasonable attorney's fees incurred by the Defendants in deposing Mr. Hopkins.  If the parties are unable to agree, within 15 days of the date of this Order, the Defendants shall file a statement of requested costs and fees, with appropriate supporting documentation, and within 10 days of that filing, the Plaintiffs shall file any response they have to the Defendants' request.  The Court will issue an Order fixing the amount to be paid, and the Plaintiffs shall tender that amount to the Defendants within 15 days of the Court's Order.  The Plaintiffs are advised that the failure to make payment as required may result in further sanctions, up to and including dismissal of this action.

The Court further finds that the prejudice to the judicial system can be cured by a sanction short of dismissal.  To properly deter both these Plaintiffs and other litigants who might contemplate similar untruthfulness, the Court must ensure that any sanction leaves the Plaintiffs in a position at least somewhat worse than they would have been in had they testified truthfully.  (Put differently, it is not enough to punish the Plaintiffs by means of a sanction that merely restores the parties to the position they would have been in had truthful testimony had been given, as there would be no deterrent effect that would result from being caught attempting to mislead.)  Had the Plaintiffs testified truthfully, they could have claimed that, notwithstanding Plaintiff Jemella Pappas' current employment, they continue to suffer some economic losses from the accident – *i.e.* that their ability to work and earn money has been diminished since the accident.  An appropriate sanction, then, would be to limit any claim for economic loss by Plaintiff Jemella Pappas, such that she is prevented from recovering any economic losses suffered beyond the end

26

of July[16] 2003, the date upon which she testified at her deposition that she last worked anywhere. By deeming Plaintiff Jemella Pappas to have fully recovered her earning capacity as of that date, her false testimony about her ability to work after that date becomes irrelevant, preventing her false testimony about such work from affecting this action.  Moreover, such a sanction has a deterrent effect, in that the Plaintiff Jemella Pappas is prevented from recovering a category of damages to which she might otherwise have been entitled.  The Court will instruct the jury that they are to assume that Plaintiff Jemella Pappas stopped incurring any economic losses from the accident by the end of July 2003, and that they should make no award to the Plaintiffs for any economic losses suffered by her[17] after that date.  This sanction should ameliorate much, if not all, of the prejudice suffered by the judicial system.[18]

---

[16]She initially testified that she last worked at the end of June 2003, but later corrected her deposition to state that she worked through the end of July 2003.

[17]The Court readily anticipates potential difficulty, insofar as this sanction applies only to Plaintiff Jemella Pappas' economic losses, not those of her husband.  As an integrated economic household, it is entirely conceivable that the Plaintiffs could take the position that economic reversals befalling them after July 2003 – *e.g.* a foreclosure, a bankruptcy, etc. – were solely the result of Plaintiff Chris Pappas not being able to work.  The Defendants have not contended that Plaintiff Chris Pappas' claims of being presently unable to work are demonstrably false, and thus, there is no justification for prohibiting him from recovering damages for his own economic losses to date.  Moreover, it is conceivable that other testimony may, directly or indirectly, bear on the ability of Plaintiff Jemella Pappas to engage in constructive work.

The Court will not undertake any efforts at this time to address the possibility that the Plaintiffs might offer evidence that conflicts with or attempts to evade this sanction.  The Court will merely advise the parties that its evidentiary rulings at trial will be made mindful of the purpose of this sanction.

[18]At this time, the Court does not consider whether the Defendants can both keep the sanction limiting economic losses and simultaneously cross-examine the Plaintiffs about the false testimony regarding Plaintiff Jemella Pappas' ability to work.  If the Defendants choose to "open the door" as to the falseness of that testimony, the Court will consider at that time whether exploration of the issue in front of the jury is itself enough of a deterrent to replace the evidentiary portion of the sanction imposed by the Court today.

Accordingly, Azar and Defendant Hungerford's motions for sanctions are granted to the extent described above.

**E.  Remaining matters**

In the interests of expediency, this Court will address the remaining motions, despite their being typically within the Magistrate Judge's bailiwick.

Azar moves to enforce **(# 164)** a confidentiality agreement regarding the deposition of its principal.  That deposition was taken the day prior to the parties executing a confidentiality agreement, but at the deposition, Azar's counsel stated on the record, without objection by the Plaintiffs, that "a confidentiality order [is] in place," and that "the testimony which will take place in this room today will remain confidential."   The Plaintiffs do not dispute that such statements were made, but deny that the protective order entered into on the following day controls the confidentiality of the deposition.  Indeed, the Magistrate Judge has stated that he did not intend the confidentiality agreement to apply *nunc pro tunc*.  In reply, Azar argues that, even if the formal confidentiality agreement does not apply, the Plaintiffs should be prevented, either under an estoppel or a contractual theory, from disclosing the contents of the deposition.

The Court rejects any suggestion that the Plaintiffs agreed to confidentiality as a matter of contract. Such an argument assumes many facets of contract formation that simply are not evident on this record.  The Court further finds that it is impossible to resort to estoppel to enforce any alleged agreement as to "confidentiality" because there is no evidence that Azar's understanding of that term was shared by the Plaintiffs, or indeed, by the Court.  Declaring certain testimony "confidential" could mean something as strict as prohibiting anyone other than counsel from ever viewing it, or something as loose as agreeing only that care should be taken in limiting its

dissemination.  Azar might argue that its counsel's reference to the "confidentiality order" then under consideration by the parties is an incorporation by reference of that agreement's definition of the term "confidentiality," but there is no reason to assume that the Plaintiffs understood that to be the case, nor that this Court should essentially deem that order to operate *nunc pro tunc* after the Magistrate Judge has refused to do so.  Accordingly, this motion is denied.

Non-party witness Sherry Rawlings has moved **(# 172)** for a protective order quashing a deposition subpoena *duces tecum* served upon her by Azar on June 11, 2007.  Rawlings raises a number of objections to the subpoena, and Azar raises a number of arguments in response, but it is sufficient for the Court to find that it is undisputed that Azar only tendered $10 as a witness fee, not the $40 required by Fed. R. Civ. P. 45(b) and 28 U.S.C. § 1821(b).  Azar argues that this issue could have been resolved had Rawlings contacted Azar before filing the motion,[19] but nevertheless, Azar does not allege that it has cured this defect.  Accordingly, Rawlings' motion is granted, insofar as the subpoena issued to her is quashed.  The Court does not reach the remaining arguments raised in the motion or response.

Azar moves to compel **(# 191)** the deposition of Mary Shields, the Plaintiffs' accountant. She was deposed on June 19, 2007, but refused to produce documents pursuant to instructions from the Plaintiffs' counsel, and she refused to answer certain questions, based on a claim of "privilege" asserted by the Plaintiffs' counsel.  The Plaintiffs respond by acknowledging that no privilege exists, and state that they withdraw any objections to the questions presented to Shields premised on privilege.  The Plaintiffs do not respond to that portion of the Azar's motion that

---

[19]The Court has not strictly enforced D.C. Colo. L. Civ. R. 7.1(A) against any party here, although all movants have violated that rule to one extent or another.

alleges that Shields is required to produce documents.  In reply, Azar requests sanctions resulting from the Plaintiffs' confession of the issue.  There being no opposition to Azar's motion to compel, the motion is granted.  The parties shall complete the deposition of Shields within 30 days of the date of this Order.  Shields shall produce at that hearing all documents responsive to the subpoena, and shall answer all questions presented to her without objections premised upon any alleged accountant's privilege.  Because the record does not reflect that the inapplicability of a statutory privilege for licensed public accountants was clearly apparent at the time of the deposition, the Court declines to award sanctions.

Finally, the Defendants' motions (**# 207, 218**) for leave to exceed the Court's page limitations on two reply briefs are granted.

## <u>CONCLUSION</u>

For the foregoing reasons, Azar's Motion for Partial Summary Judgment (**# 67**) is **GRANTED**, and judgment shall enter in favor of Azar on the Colorado Consumer Protection Act, fraudulent misrepresentation, and negligent misrepresentation claims.  The Plaintiffs' Motion for Sanctions (**# 85**) is **DENIED**.  The Plaintiffs' Motion for Partial Summary Judgment (**# 111**) is **DENIED**.   Azar's Motion to Enforce (**# 164**) a confidentiality agreement is **DENIED**.  The Plaintiffs' Renewed Motion for Sanctions (**# 169**) is **DENIED**.  Azar's Motion to Seal (**# 171**) certain portions of the Plaintiffs' response to the Defendants' Motion for Summary Judgment is **DENIED**, and the Clerk of the Court shall unseal Docket # 119. Non-party Sherry Rawlings' Motion for a Protective Order (**# 172**) is **GRANTED IN PART**, insofar as the subpoena served upon her on June 11, 2007 is quashed, and **DENIED IN PART**, insofar as the Court does not reach the remaining arguments therein.  The Plaintiffs' Motion for Contempt against non-party

Rodney Bridges (**# 176**) is **DENIED** without prejudice.  The Plaintiffs' Motion to Seal (**# 184**) their reply to their Renewed Motion for Sanctions is **DENIED**, and the Clerk of the Court shall unseal Docket # 185.  Azar's Motion to Compel deposition testimony from non-party Mary Shields (**# 191**) is **GRANTED**, and the parties shall complete the deposition of Shields within 30 days of the date of this Order.  Azar's Motion for Sanctions (**# 203**) and Defendant Hungerford's Motion for Sanctions (**# 206**) are **GRANTED IN PART** and **DENIED IN PART** on the terms set forth herein.  Defendant Hungerford's Motion to Exceed Page Limits (**# 207**) is **GRANTED**.  The Plaintiffs' Motion to Seal (**# 211**) is **DENIED**, and the Clerk of the Court is directed to unseal Docket # 212.  Azar's Motion for Leave to Exceed Page Limits (**# 218**) is **GRANTED**.

Dated this 7th day of September, 2007

**BY THE COURT:**

Marcia S. Krieger
United States District Judge

31