IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 06-cv-01024-MSK-BNB

CHRIS PAPPAS, and
JAMELLA PAPPAS,

Plaintiffs,

v.

FRANK AZAR & ASSOCIATES, P.C., a Colorado professional corporation, and
LISA M. HUNGERFORD,

Defendants.
_____

**ORDER**
_____

This matter is before me on the following:

(1) **Defendant Frank Azar & Associates, P.C.'s Motion to Amend/Modify the Scheduling Order Regarding Various Deadlines and Request for Hearing** [Doc. # 225, filed 8/29/2007] (the "Motion to Amend Schedule");

(2) **Plaintiffs' Motion for Sanctions and for Information Relating to the Identity of Those Representatives of Defendants Who Engaged in Unethical Litigation Conduct** [Doc. # 227, filed 8/29/2007] (the "Plaintiffs' First Motion for Sanctions");

(3) Plaintiffs' **Motion to Compel Disclosure Requirements Pursuant to FRCP 37(a)(2) and Motion for Sanctions** [Doc. # 228, filed 8/30/2007] (the "Plaintiffs' Motion to Compel");

(4) **Plaintiffs' Motion to Disqualify Levy, Morse & Wheeler, P.C.** [Doc. # 236, filed 9/13/2007] (the "Motion to Disqualify");

(5) **Defendant Franklin D. Azar & Associates, P.C.'s Motion for Leave to File a Sur-Reply In Response to Plaintiffs' Reply In Support of Motion to Disqualify Levy, Morse & Wheeler, P.C.** [Doc. # 286, filed 10/29/2007] (the "Motion to File Sur-Reply"); and

(6) **Plaintiffs' Motion for Sanctions for Abusive Discovery Conduct** [Doc. # 256, filed 10/1/2007] (the "Plaintiffs' Second Motion for Sanctions").

The plaintiffs have filed a third motion for sanctions [Doc. # 290, filed 11/1/2007] which is not yet fully briefed.

## 1. Motion to Amend Schedule

A scheduling conference occurred on August 23, 2006. [Doc. # 18.] The schedule that was entered specified that experts would be disclosed on November 10, 2006, and rebuttal experts would be disclosed on December 31, 2006; discovery would close on February 1, 2007; and dispositive motions were due on March 1, 2007.

Subsequently the parties moved to modify the schedule. First, on November 9, 2006, I granted the parties' request to extend expert designations to December 11, 2006, and rebuttal designations to January 30, 2007. Minute Order [Doc. # 30]. Next, on March 12, 2007, I granted the parties' request and extended the discovery cut-off to April 30, 2007. Order [Doc. # 100]. Finally, on June 1, 2007, I entered an Order [Doc. # 155] concerning depositions to be taken, even though discovery had closed, stating:

> IT IS FURTHER ORDERED that on or before **June 7, 2007**, the parties shall submit either: (1) an agreed schedule for all remaining depositions to be taken in the case, which I will make an order of the court; or (2) a notice that no agreement can be reached, in which case I will set a hearing at the conclusion of which I will set a schedule for all remaining depositions.

The parties did neither. Instead, each side submitted its own deposition schedule. See Plaintiffs' Submission of Schedule for Remaining Depositions [Doc. # 162, filed 6/7/2007]; and Defendants' Submission of a Deposition Schedule and Notice Regarding Depositions Not Agreed Upon Pursuant to Magistrate Judge Boyd N. Boland's Order of May 31, 2007 [Doc. # 163, filed 6/7/2007]. Even so, the parties agreed that certain depositions would be concluded by June 20, 2007. The defendants requested additional depositions of "Plaintiffs' employers/ supervisors in Nevada" and to "continue the depositions of the Plaintiffs." [Doc. # 163] at ¶¶2-3. No motion to compel the defendants' additional depositions was filed, however, and I did not set a hearing on the defendants' Notice.

Nearly four months after the close of discovery, and two months after the last depositions were to be completed, Azar & Associates filed the instant motion, seeking substantial extensions of the deadlines.

A deadline established in a scheduling order may be modified only upon a showing of good cause. Fed. R. Civ. P. 16(b). In this context, good cause has been interpreted to mean:

> [T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension. Since the scheduling order is entered early in the litigation, this standard seems more appropriate than a "manifest injustice" or "substantial hardship" test.

Advis. Comm. Notes for 1983 Amend. In addition:

> Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment. Properly construed, "good cause" means that scheduling deadlines cannot be met despite a party's diligent efforts. . . . Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.

Dilmar Oil Co., Inc. v. Federated Mutual Ins. Co., 986 F. Supp 959, 980 (D.S.C. 1997), aff'd, 129 F.3d 116 (4th Cir. 1997)(internal citations omitted). It is worth reiterating that a scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril. See, e.g., Washington v. Arapahoe County Dept. of Social Services, 197 F.R.D. 439, 441 (D. Colo. 2000); Widhelm v. Wal-Mart Stores, Inc., 162 F.R.D. 591, 593 (D. Neb. 1995); Gestetner Corp. v. Case Eqpt. Co., 108 F.R.D. 138, 141 (D. Me. 1985).

First, Azar & Associates seeks a 15 day extension to amend pleadings. No motion to amend has been filed. I will not extend the time for seeking leave to amend in the abstract. Instead, Azar & Associates must establish good cause for the specific amendments sought. Good cause requires that Azar & Associates show that it was not aware of the facts underlying the requested amendment when the deadline contained in the Scheduling Order passed, and could not in the exercise of reasonable diligence have sought leave to amend within that time. No such showing has been made. In addition, virtually every pretrial deadline had expired before August 29, 2007, when Azar & Associates finally filed its request to extend the deadline. No explanation for this long delay is made. Under these circumstances, I find that no good cause has been shown to extend the deadline to amend.

Azar & Associate also seeks a 90 day extension to conduct additional discovery, stating that it "recently obtained testimony . . . that exposed Plaintiffs' insurance and potential tax fraud. Azar also obtained testimony and documents from an employer . . . that show Plaintiffs lied under oath at their depositions in this case regarding Jamella Pappas' ongoing employment and income."

4

Motion to Amend Schedule at ¶15.[1] In general, Azar & Associates has failed to specify when it obtained this "recent" evidence. It certainly occurred no later than June 20, 2007, when the last of the agreed-to depositions was required to be completed. There is no explanation for the delay of at least two months in filing the motion to extend discovery. Azar & Associates has been aware since the beginning of the case that the veracity of the Pappases is in dispute,[2] and it had adequate time during the eight month discovery period to probe that issue. Nor is there any explanation of why a 90 day extension of discovery is required. I find that no good cause for this extension has been shown.

Azar & Associates seeks an extension to file materials relating to its Motion for Partial Summary Judgment. The district judge granted Azar's Motion for Partial Summary Judgment. Order [Doc. # 225, filed 8/29/2007]. Consequently, the request for extension related to that motion is moot.

Azar & Associates seeks additional time to file a motion to preclude expert testimony by Messrs. Hodges and Rosenbaum, plaintiffs' "malpractice" experts. The challenged expert reports were submitted in December 2006, and the experts were required to be deposed by

---

[1]Azar & Associates acknowledges that its request to take depositions concerning Mrs. Pappas' employment is now moot. Defendant Frank Azar & Associates, P.C.'s Reply to Plaitniffs' Response to Defendant Azar P.C.'s Motion to Amend or Modify the Scheduling Order [Doc. # 277, filed 10/9/2007] at p.2.

[2]Indeed, Azar & Associates argues in the Motion for Extension the "Plaintiffs' lack of credibility was one of the driving forces behind Defendants' advising Plaintiffs to settle the underlying case. . . . As Azar attorney Rodney Bridgers explained to Plaintiffs around the time of settlement [in the underlying case], '. . . a good defense lawyer is going to grab onto your credibility like a dog with a bone and not let go.'" Motion for Extension at ¶¶4, 6.

April 30, 2007, although it appears that the depositions may not have occurred until June 2007.[3]
The deadline for Rule 702 motions was March 30, 2007. Pre-Trial Preparation and Trial Setting Order--Civil [Doc. # 63, filed 1/24/2007]. Azar & Associates claims good cause for this extension based on excusable neglect:

> Azar entrusted the keeping and meeting of deadlines to his former counsel, and relied upon former counsel to calendar and meet such deadlines. Azar's reliance, although reasonable, was apparently misplaced, as the deadlines passed without action from former counsel. It was always Azar's intention to . . . move to strike Plaintiffs' retained expert witnesses under Fed. R. Civ. P. 702. Azar's failure to do so under the circumstances amounts to excusable neglect.

Current counsel for Azar & Associates entered the case on May 17, 2007. Entry of Appearance [Doc. # 146]. There is no explanation of the delay from May 17, 2007, and certainly from the date of the experts' depositions (June 4, 2007) until August 29, 2007, in seeking an extension of the deadline to file Rule 702 objections. Nor do I agree that Azar & Associates' revolving door of lawyers constitutes excusable neglect sufficient to justify the extension. Azar & Associates has been represented throughout this case by as many as 11 lawyers from seven different law firms. Its repeated decision to change counsel does not constitute excusable neglect. The assertion of excusable neglect is further undercut by the fact that Azar & Associates is a law firm. Franklin Azar, its principal, has been present at many of the hearings on this matter and appears to have closely monitored the litigation. I do not find the existence of excusable neglect in connection with Azar & Associates failure to make Rule 702 objections.

---

[3]Azar & Associates does not explain why these depositions occurred after the discovery cut-off. They are not among the depositions allowed by my order of June 1, 2007. [Doc. # 155.]

Finally, Azar & Associates asks for additional time to supplement its disclosure regarding non-retained expert witnesses. No explanation is offered as to what supplementation is required; how the initial disclosures are inadequate; or why the request to supplement comes nearly five months after the disclosures were required to be made. Azar & Associates has failed to make any adequate showing to justify the requested extension.

The Motion for Extension is DENIED in all respects

### 2. Plaintiffs' First Motion for Sanctions

In a wholly unsupported motion, the plaintiffs' state that "[a] representative of Defendants in the subject case contacted the Department of Social Security and requested an investigation or prosecution of Plaintiff Gloria Pappas take place, alleging Plaintiff Gloria Pappas was engaged in Social Security Fraud." Plaintiffs' First Motion for Sanctions at p.1. The plaintiffs seek extreme sanctions, including (1) that defendants be compelled to identify the individual(s) who filed the complaint with the Social Security Administration; (2) an award of fees incurred in bringing the motion; (3) an order "barring [d]efendants at trial from arguing or mentioning [p]laintiff engaged in any type of Social Security Fraud"; (4) a fine against the defendants; and (5) an order striking all defenses relating to any fraudulent conduct by plaintiffs. Plaintiffs' First Motion for Sanctions at p.3.

The plaintiffs offer no evidence (as distinguished from unsubstantiated argument of counsel) that the Social Security Administration ("SSA") was contacted by an outside witness or complainant; no indication of who they believe contacted SSA beyond the generality of a "representative" of the defendants; no evidence supporting the assertion that the defendants had anything to do with any such contact, if it occurred; nothing to support their claim that the

7

contact, if there was any, was by or under the direction of a lawyer subject to the Colorado Rules of Professional Conduct; no evidence that the contact, if there was any, was made "solely to obtain an advantage in a civil matter"; and no evidence that SSA conducted any kind of investigation. As the district judge noted in her order of September 7, 2007 [Doc. # 232], "[b]oth parties have somewhat shifted their focus from litigating the substantive issues in this case to seeking sanctions against one another, and against third-party witnesses." Order [Doc. # 232] at p.18.

I refuse to grant serious sanctions in the absence of any evidence. Nor will I open discovery in this case to litigate the sideshow of a wholly unsupported claim of improper lawyer conduct. The Plaintiffs' First Motion for Sanctions is DENIED.

### 3. Plaintiffs' Motion to Compel

Plaintiffs' Motion to Compel seeks an order compelling the production of two documents, or an unqualified response that no such documents exist. The first document requested is the "Plaintiff's Answers to Defendant Terry L. Specht's First Set of Pattern and Non-Pattern Interrogatories Propounded to Jamella Pappas," made in the underlying state court action[4] (the "Underlying Action") and signed by Jamella Pappas. Plaintiffs' Motion to Compel at p.5. Azar & Associates admits in its response that "signed (under oath) interrogatory responses . . . do not exist." Defendant Frank Azar & Associates, P.C.'s Response to Plaintiffs' Motion to Compel Disclosure Requirements Pursuant to FRCP 37(a)(2) and Motion for Sanctions [Doc. #

---

[4]The Underlying Action is styled <u>Chris Pappas and Jamella Pappas v. Terry L. Specht and Fred Villa</u>, Case No. 2003CV1673, filed in the District Court of Weld County, Colorado.

246, filed 9/19/2007] ("Azar's Response") at p.4. I cannot compel production of a document that does not exist. The Plaintiffs' Motion to Compel is DENIED in this regard.

The second document requested is "any draft Answers or corrections to the Interrogatories submitted by Plaintiffs to Defendants if such documents exist." Plaintiffs' Motion to Compel at p.8. Azar & Associates responded to this request as follows:

> The second discrete issue raised in Plaintiffs' Motion is Plaintiffs' draft answers to discovery in the underlying case. . . . Plaintiffs mistakenly contend that these documents have not been provided. . . . This is incorrect.
>
> These documents are part of Azar's file for the underlying case, which was disclosed by Azar's former counsel in August of 2006. *See* Initial Rule 26(a)(1) Disclosures of Defendant Frank Azar & Associates, P.C., a copy of which is attached hereto as Exhibit H, p.7, § II.A.(1).

Azar's Response at p.8.

The record indicates that Azar & Associates listed in its Rule 26(a)(1) disclosures the following category of documents:

> Files of Defendant relating to *Chris Pappas and Jamella Pappas v. Terry L. Specht and Fred Villa*, Case No. 03-CV-1673, Weld County District Court, Colorado, including, but not limited to, pleadings, disclosures, discovery, correspondence, medical records, fee agreements, expert reports, and related documents. Any privileged documents withheld shall be described in compliance with Rule 26(b)(5), C.R.C.P.

Azar's Response, Exh. H at Part II.A.(1). In their reply, however, the plaintiffs assert that they have thoroughly reviewed the disclosures and that they were unable to find any draft interrogatory answers. Plaintiffs' Reply [Doc. # 255, filed 10/1/2007] at Affidavit of Kathleen Meek, ¶¶2-3.

Although Azar & Associates did not produce in its Response another copy of the draft

9

interrogatory answers or identify with specificity (as by Bates number, if available) where the draft answers could be found, a copy of the draft interrogatory answers subsequently was provided as Exhibit E to Defendant Franklin D. Azar & Associates, P.C.'s Response In Opposition to Plaintiffs' Motion to Disqualify Levy, Morse & Wheeler, P.C. [Doc. #263, filed 10/3/2007]. Consequently, the plaintiffs have received a copy of the document they seek, and this portion of the Motion to Compel is DENIED AS MOOT.

### 4. Motion to Disqualify

Plaintiffs seek to disqualify defendants counsel--Levy Morse & Wheeler--arguing that lawyers of that firm, including Marc Levy and Kim Poletto, are necessary witnesses. The Motion to Disqualify is DENIED.

A motion to disqualify counsel is addressed to the sound discretion of the district court. World Youth Day, Inc. v. Famous Artists Merchandising Exchange, Inc., 866 F. Supp. 1297, 1299 (D. Colo. 1994). Insofar as is relevant here, this court applies the rules of professional conduct adopted by the Colorado Supreme Court as the standard of professional responsibility for lawyers practicing before it. D.C.COLO.LCivR 83.4. The plaintiffs' Motion to Disqualify rests on Colorado Rule of Professional Conduct 3.7, which provides in relevant part:

> (a) A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness except where:
>
> (1) the testimony relates to an uncontested issue;
>
> (2) the testimony relates to the nature and value of legal services rendered in the case; or

>(3) disqualification of the lawyer would work substantial hardship on the client.
>
>(b) A lawyer shall both act as an advocate at trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless the requirements of Rule 1.7 and Rule 1.9 have been met.

A lawyer is likely to be a necessary witness where the proposed testimony is relevant, material, not merely cumulative, and unobtainable elsewhere. World Youth Day, 866 F. Supp. at 1302.

As the moving parties, plaintiffs have the burden to establish grounds for the disqualification of Levy Morse & Wheeler and its lawyers. Religious Technology Center v. F.A.C.T. Net, Inc., 945 F. Supp. 1470, 1473 (D. Colo. 1996). When ruling on a motion to disqualify counsel, I must make specific findings and conclusions. Fullmer v. Harper, 517 F. 2d 20, 21-22 (10th Cir. 1975). However, the use of these findings is restricted to the decision of this motion only, and the parties are not bound by these factual findings for any other purpose in the course of this case. Religious Technology, 945 F. Supp. at 1473; World Youth Day, 866 F. Supp. at 1299.

Motions to disqualify opposing counsel should be viewed with suspicion. I must guard against the possibility that disqualification is sought to "secure a tactical advantage in the proceedings." Religious Technology, 945 F. Supp. at 1478.

The Motion to Disqualify is not verified. No party has requested a hearing on the Motion to Disqualify or suggested that I must take evidence to decide it.[5] It is obvious to me that the

---

[5] The plaintiffs attached the disputed discovery responses to their reply in support of the Motion to Disqualify [Doc. # 285, filed 10/23/2007] (the "Reply"). The responses were signed by the Pappases' lawyer, Lisa Hungerford, and not by the Pappases. Reply at Exhs. D-E [Doc. # 285-5].

11

lawyers of Levy Morse & Wheeler are not necessary witnesses in this action, and it appears that the Motion to Disqualify is brought by the plaintiffs in an improper attempt to gain a tactical advantage in the litigation. Under these circumstances, I conclude that an evidentiary hearing is not required. Religious Technology, 945 F. Supp. at 1473 n.2 (finding that an evidentiary hearing is not required in connection with every motion to disqualify based on Colorado Rule of Professional Conduct 3.7).

This case springs from an underlying state court action. See note 8 supra. The Underlying Action involved claims arising from an automobile accident. The Pappases were plaintiffs in the Underlying Action, represented by Azar & Associates. One of the defendants in the Underlying Action, Terry Specht, was represented for a time by Levy Morse & Wheeler.[6] Azar & Associates has engaged Levy Morse & Wheeler--its adversary in the Underlying Action--to defend it here.

The factual bases asserted by the plaintiffs in support of the Motion to Disqualify are the following:

> Defendants have chosen a theory of defense in this case that relies on Plaintiffs' purported credibility problems. Specifically, Defendants rely heavily on their allegation that Plaintiffs submitted falsely sworn interrogatory responses in which they disclaimed any prior bankruptcy.
> \* \* \*
> Defendants, however, have never disclosed any set of interrogatories signed or averred by Plaintiff, but Defendants have nonetheless constructed their defense around the fact that Defendants' actions in pressuring Plaintiffs to accept a low settlement were justified in light of Plaintiffs' supposed lies.

---

[6]The plaintiffs state in the Motion to Disqualify that Robin Wick of Wick, Bramer & Trautwein "assumed the representation of Mr. Specht" on June 1, 2005. Motion to Disqualify at p.7.

> * * *
> Plaintiffs must rebut the facts underlying Defendants' theory of defense, including Defendants' unsupported claim that Plaintiffs signed or averred the interrogatories in which they supposedly claim to have never filed bankruptcy. . . . Plaintiffs are entitled to present evidence ruling out the possibility that a signed or averred copy of those interrogatories exist. Since Levy, Morse & Wheeler propounded the interrogatories, they have unique knowledge which Plaintiff is entitled to present and which can not be adduced in any other independent manner.
> * * *
> Because Plaintiffs must rebut Defendants' claim that Plaintiffs signed or averred the interrogatory responses, Plaintiffs must demonstrate the absence of evidence. Proper demonstration of the absence of evidence requires the systematic elimination of potential sources of that evidence. Defendants have disclosed a letter dated February 15, 2005 written by Mr. Poletto [a lawyer at Levy Morse & Wheeler who represented Mr. Specht in the Underlying Action], bearing a facsimile time stamp of Apirl 20, 2005, in which Mr. Poletto indicates that he has not received verification of the interrogatory responses submitted on Plaintiffs' behalf. On June 1, 2005 Mr. Wick [of a different law firm] assumed representation of Mr. Specht and the Plaintiffs' depositions were held shortly thereafter on June 16, 2005. During Mrs. Pappas' deposition, Defendant Hungerford [a lawyer at Azar & Associates who represented the Pappases in the Underlying Action] acknowledged that no verification of Plaintiffs' interrogatories had been produced to Mr. Wick.
> * * *
> Plaintiffs have requested that present defense counsel provide signed copies of Plaintiffs' interrogatories, but the response was insufficient to determine whether or not Defendants possess them. Thus, it will also be necessary to call present counsel as a witness in this trial for the purpose of testifying that he was unable to produce signed or verified copies of Plaintiffs' interrogatory responses.

Motion to Disqualify at pp. 2-3 and 7-8.

It is undisputed, however, that the Pappases never signed the interrogatory answers in question. Azar & Associates certainly does not argue that they did. To the contrary, Azar & Associates states unequivocally in its response to the Motion to Disqualify that "no interrogatory

13

answers signed by the Plaintiffs were submitted to defense counsel in the underlying case."[7] Defendant Franklin D. Azar & Associates, P.C.'s Response In Opposition to Plaintiffs' Motion to Disqualify Levy, Morse & Wheeler, P.C. [Doc. # 263, filed 10/3/2007] (the "Response"). Elsewhere in these proceedings Azar & Associates has admitted that "signed (under oath) interrogatory responses . . . do not exist." See p.8 supra; Azar's Response [Doc. # 246] at p.4. Azar & Associates even offered to enter into a stipulation stating that "[a]t no time was defense counsel for Terry Specht in the underlying lawsuit, Kim Poletto, of Levy Morse & Wheeler, P.C., provided with responses to written discovery signed by the Pappases," which the plaintiffs refused. Response at Exhs. K [Doc. # 263-12] and L [Doc. # 263-13]. Consequently, the alleged dispute about the "signed or averred interrogatories" is much ado about nothing.

---

[7]Azar & Associates has attached as an exhibit to its response to the Motion to Disqualify a portion of the deposition testimony of Jamella Pappas containing the following exchange, further demonstrating that the interrogatories at issue were not signed by the Pappases:

> Q (By Mr. Wick) Okay. I'll hand you what's been marked as Deposition Exhibit 2 [Jamella Pappas' interrogatory answers], and I will just tell you that it is my understanding that these are interrogatories that were sent to you and were answered by you and signed. . .
>
> MS. HUNGERFORD: Yes. We owe you a verification page.
>
> MR. WICK: Oh, okay.
>
> Q (By Mr. Wick) I take that back. There weren't signed. They were sent to us by your attorney on April 8th, 2005.

Defendant Franklin D. Azar & Associates, P.C.'s Response In Opposition to Plaintiffs' Motion to Disqualify Levy, Morse & Wheeler, P.C., Exh. I [Doc. # 263-10] at p.47 lines 6-16.

Rule 3.7(a)(1), Colorado Rules of Professional Conduct, expressly provides that disqualification is not necessary where, as here, a lawyer's testimony "relates to an uncontested issue."

Moreover, the testimony which the plaintiffs claim to need from the lawyers at Levy Morse & Wheeler may be obtained elsewhere. The Pappases, of course, may testify that they did not sign the interrogatory answers; Ms. Hungerford may testify that she, not the Pappases, signed the interrogatory answers; and Mr. Wick (substitute counsel for Specht) may testify that the interrogatory answers were not signed by the Pappases. The testimony of the lawyers at Levy Morse & Wheeler to the same effect would be cumulative and wholly unnecessary.

In their Reply, the Pappases modified their argument for disqualification:

> Mr. Poletto's testimony is also necessary to extablish his personal opinion of Plaintiffs' underlying claims, and whether the "credibility" issues cited by Defendants actually had an impact, in his opinion, on the strength of Plaintiffs' case. As the attorney adverse to Plaintiffs in the underlying case, Mr. Poletto is in a unique position of being able to opine on the merits of Defendants' case-within-a-case defense.

Reply [Doc. # 285] at p.3.[8] I do not agree. Any misstatements in the interrogatory answers were uncovered in the Pappases' depositions, and by that time Levy Morse & Wheeler had been replaced by Mr. Wick as counsel for Mr. Specht. See Motion to Disqualify at p.7 (noting that Mr. Wick "assumed representation of Mr. Specht" on June 1, 2005). Mr. Poletto's views, if any, on the strength of the Pappases' case after the interrogatory misstatements were uncovered were not known to the Pappases or their lawyers in deciding whether to settle the Underlying Action,

---

[8]Azar & Associates filed a Motion to File Sur-Reply [Doc. # 286, filed 10/29/2007]. The issue is adequately briefed, and further arguments would not assist me in deciding the matter. Consequently, the Motion to File Sur-Reply is DENIED.

15

and in any event are irrelevant and not material in this case. The question which the Pappases and their lawyers confronted in deciding whether to settle the Underlying Action was the anticipated impact of the interrogatory misstatements on a jury.

The plaintiffs' improper purpose in pursuing this Motion to Disqualify is apparent from their refusal to accept the stipulation offered by Azar & Associates that "[a]t no time was defense counsel for Terry Specht in the underlying lawsuit, Kim Poletto, of Levy Morse & Wheeler, P.C., provided with responses to written discovery signed by the Pappases," Response at Exh. K [Doc. # 263-12], and by their overreaching counter-demand. Response at Exh. L [Doc. # 263-13].[9]

Neither Marc Levy, Kim Poletto, nor any other lawyer associated with Levy, Morse & Wheeler is a necessary witness in this case.

### 5. Plaintiffs' Second Motion for Sanctions

The Plaintiffs' Second Motion for Sanctions requests that I "admonish" Marc Levy, one of the defense lawyers, for abusive discovery conduct. The alleged abusive conduct concerns a disagreement about whether the Pappases' 2006 tax returns had been disclosed. The testimony indicates that Mary Shields, the Pappases' accountant, sent the Pappases' 2006 tax return to plaintiff's counsel (Patric LeHouillier) on August 6, 2007, but that tax return may not have been

---

[9]The plaintiffs demanded that Azar & Associates stipulate not only to the fact that the discovery responses are not signed by the Pappases, but also to the statements that "[i]n the course of representing Franklin D. Azar & Associates, P.C., Levy, Morse & Wheeler have repeatedly and emphatically represented to this Court that interrogatory responses signed by Christopher and Jamella Pappas and acknowledged in the Pappas v. Specht case do, in fact, exist," and that "[w]hen asked by Plaintiffs to produce copies of the interrogatory responses signed by Christopher and Jamella Pappas, Counsel from Levy, Morse & Wheeler indicated that they were too busy." Response at Exh. K [Doc. # 263-13]. This is too much.

16

disclosed to Azar & Associates prior to Ms. Shields' deposition on September 26, 2007. The plaintiffs claim that Mr. Levy's conduct during the following exchange was abusive:

> MR. LEVY: And, Mr. LeHouillier, can you tell me, please, why you did not disclose those and instead concealed those from production?
>
> MR. LEHOUILLIER: Mr. Levy, I don't know whether they've been disclosed or not. But nobody is concealing anything.
>
> MR. LEVY: Mr. LeHouillier, they have not been disclosed, which means they were concealed, using the definitions used by the State of Colorado and the Colorado legislature.
>
> MR. LEHOUILLIER: This happens to be a federal case, Mr. Levy.
>
> MR. LEVY: I understand. The state law controls, Mr. LeHouillier.
>
> And so, again, could you tell me why two months later they've not been produced?
>
> MR. LEHOUILLIER: Mr. Levy, your characterization of two months is absolutely inaccurate to begin with, assuming that this August 7 date is accurate. I don't know whether they've been disclosed or not. I've told you that.

Plaintiffs' Second Motion for Sanctions, Exh. A [Doc. # 256-2, filed 10/1/2007] at p.138 line 12 through p.139 line 8.

The plaintiffs provide no authority for the requested sanction.

Although Mr. Levy's statements may have been intemperate and certainly are not a model of civility, they are not abusive conduct justifying the imposition of a sanction. The Plaintiffs' Second Motion for Sanctions is meritless and is DENIED.

IT IS ORDERED that the Motion to Amend Schedule is DENIED.

IT IS FURTHER ORDERED that the Plaintiffs' First Motion for Sanctions is DENIED.

IT IS FURTHER ORDERED that the Plaintiffs' Motion to Compel is DENIED with respect to "signed (under oath) interrogatory responses," and is DENIED AS MOOT with respect to draft interrogatory answers.

IT IS FURTHER ORDERED that the Motion to Disqualify is DENIED.

IT IS FURTHER ORDERED that the Motion to File Sur-Reply is DENIED.

IT IS FURTHER ORDERED that the Plaintiffs' Second Motion for Sanctions is DENIED.

Dated November 27, 2007.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge