IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 06-cv-01024-MSK-BNB

CHRIS PAPPAS, and
JAMELLA PAPPAS,

        Plaintiffs,

v.

FRANK AZAR & ASSOCIATES, P.C., a Colorado Professional Corporation, and
LISA M. HUNGERFORD,

        Defendants.

---

## OPINION AND ORDER DENYING MOTION FOR RECONSIDERATION

---

**THIS MATTER** comes before the Court pursuant to the Plaintiffs' Motion for

Reconsideration **(# 259)** of the Court's September 7, 2007 Opinion and Order **(# 232)** granting

Defendant Frank Azar & Associates, P.C.'s ("Azar") Motion for Partial Summary Judgment, the

Defendants' response **(# 284)**, and the Plaintiffs' reply **(# 288)**.  As discussed more fully below,

the Court's consideration of this motion is also informed by the evidence and arguments presented

at an evidentiary hearing on April 2, 2008.

      The underlying facts and procedural history of this case are set out in detail in the Court's

September 7, 2007 Opinion and Order, and that recitation is deemed incorporated herein.  In

summary, the Plaintiffs' claims in this action can be grouped into two categories: claims of

professional negligence by the Defendants, and claims that Azar's advertsing was misleading.  At

the close of discovery, Azar moved **(# 67)** for summary judgment on the advertising claims –

1

namely, the Plaintiffs' claims arising under the Colorado Consumer Protection Act ("CCPA") and claims for fraudulent and negligent misrepresentation. On September 7, 2007, the Court granted **(# 232)** Azar's motion, finding that the advertisements proffered by the Plaintiffs were not materially misleading, and, at best, constituted unspecific statements of opinion or puffery.

The Plaintiffs filed the instant motion seeking reconsideration of the Court's summary judgment ruling on the advertising claim, raising four arguments: (i) that newly-discovered evidence of additional advertisements by Azar reveal statements that are not opinion or puffery; (ii) that the Court applied an incorrect standard to the CCPA claim, and that legal advertising is subject to a heightened level of scrutiny under that statute; (iii) there are genuine disputes of fact as to Azar's knowledge and intent in making the advertising representations; and (iv) that the Court erred in dismissing the Plaintiffs' negligent misrepresentation claim as it related to Defendant Hungerford.

The Federal Rules of Civil Procedure do not expressly contemplate a "motion for reconsideration." Rules 59(e), 60(b), and the Court's inherent authority all permit the Court, in appropriate circumstances, to revisit and revise its rulings if necessary, prior to the entry of final judgment *Price v. Philpot*, 420 F.3d 1158, 1167 n. 9 (10th Cir. 2005). The timeliness of the motion determines whether it is analyzed under Rule 59(e) – if filed within 10 days of the entry of the judgment or order – or Rule 60(b) – if filed later than 10 days. *Id., citing Hawkins v. Evans*, 64 F.3d 543, 546 (10th Cir. 1995). Here, the Plaintiffs' motion was filed more than 10 days after the entry of the Order it seek reconsideration of, and thus, the Court analyzes the motion under Fed. R. Civ. P. 60(b).

Rule 60(b) permits the Court to reconsider an order due to, among other things, a substantive "mistake or law or fact" by the Court, Fed. R. Civ. P. 60(b)(1), *Yapp v. Excel Corp.*, 186 F.3d 1222, 1231 (10th Cir. 1999); "newly discovered evidence that, with reasonable diligence, could not have been discovered [earlier]," Fed. R. Civ. P. 60(b)(2); or as a result of "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Nevertheless, reconsideration under Rule 60(b) is extraordinary, and may only be granted in exceptional circumstances. *Rogers v. Andrus Transp. Services*, 502 F.3d 1147, 1153 (10th Cir. 2007). Reconsideration is not a tool to rehash previously-presented arguments already considered and rejected by the Court, nor to present new arguments based upon law or facts that existed at the time of the original argument. *FDIC v. United Pacific Ins. Co.*, 152 F.3d 1266, 1272 (10th Cir.1998); *Van Skiver v. United States*, 952 F.2d 1241, 1243-44 (10th Cir.1991).

The Court turns first to the Plaintiffs' argument that they possess "newly-discovered evidence" of additional misleading advertising by Azar. At the evidentiary hearing, the Plaintiffs conceded that, despite the apparent characterization of the advertisements attached to their motion as Exhibit 1 as "New Evidence," Exhibit 1 was not "newly-discovered" evidence. Accordingly, the Court disregards the advertisements in Exhibit 1. The only alleged "newly-discovered" evidence proffered by the Plaintiffs is Exhibits 3 and 4, a DVD and accompanying transcript of the audio portion of 41 of Azar's advertisements.[1]

Generally speaking, to obtain reconsideration of a ruling based on "newly-discovered evidence," a party must show: (i) that the evidence was newly-discovered since the prior order

---

[1] To establish relevance of these advertisements, the Plaintiffs have submitted an affidavit of Plaintiff Chris Pappas that states that "the advertisements shown on [these exhibits] are similar or the same as those I saw prior to retaining the Azar law firm."

was entered; (ii) that the party seeking reconsideration was diligent in discovering it; (iii) that the evidence is not merely cumulative; (iv) that it is material; and (v) that the evidence would be sufficient to produce a different result. *See e.g. Zurich North America v. Matrix Service, Inc.*, 426 F.3d 1281, 1289-90 (10th Cir. 2005). Significantly, the first and second factors require not only a showing that the evidence was not in the possession of the movant before the court's order, but a showing that the movant could not have known of and obtained the evidence through discovery prior to the court's order. *Id.*; *Webber v. Mefford*, 43 F.3d 1340, 1345 (10th Cir.1994) (counsel must show that it made a diligent yet unsuccessful attempt to discover the evidence).

Here, the Court declines to reconsider its summary judgment ruling on the strength of the Plaintiffs' "newly-discovered evidence" for several reasons. First, the Court finds that even the Plaintiffs do not know what portion of Exhibits 3 and 4 are "new." They conceded at the evidentiary hearing that some of the advertisements on Exhibits 3 and 4 were duplicative of advertising already in their possession when responding to the Motion for Summary Judgment, and that they were unable to identify which advertisements were "new" and which were not. Second, the Plaintiffs have not made a sufficient showing that Exhibits 3 and 4 are indeed "newly-discovered." The Plaintiffs had obtained the DVD of the Azar advertisements as of August 24, 2007, more than a week before the Court issued its ruling on the Motion for Summary Judgment. Although the Plaintiffs explained that the transcription of the DVD was not completed until after the Court had ruled, they did not request that the Court delay determination of the Motion once they received the DVD, nor did they submit the DVD itself, without transcription, as supplemental evidence prior to the Court's ruling. Indeed, the Plaintiffs argue in their Motion for Reconsideration that the full impact of the advertisements cannot be had from a transcription

alone, and that viewing the DVD is essential. As a result, there is no reason why the Plaintiffs needed to await a transcription of the DVD before supplying it to the Court.

Moreover, even assuming that the Plaintiffs did not receive the DVD sufficiently in advance of the Court's ruling to permit them to assess its significance and supplement their briefing accordingly, they have nevertheless failed to offer any explanation as to why they were unable to obtain the advertisements through ordinary discovery in this matter. The Plaintiffs had a full opportunity to conduct discovery, and have frequently availed themselves of motions to compel when the Defendants' production was not to their satisfaction. Certainly, there was no impediment to the Plaintiffs requesting production of all advertisements aired by Azar during the relevant time period, nor any reason why the Plaintiffs could not have compelled such a production if Azar failed to cooperate. Moreover, the Plaintiffs' counsel conceded that he long ago requested the DVD in discovery in another action, and that due to delay in that action, did not have it at the time they responded to the Motion for Summary Judgment in this case. Thus, it is clear that the Plaintiffs' counsel knew of the potential existence of the advertisements long before the Court's ruling, and the Plaintiffs have offered no explanation as to why, with due diligence, they could not have obtained it earlier. Because the Plaintiffs have shown no reason why the new advertisements could not have been obtained through diligent discovery, they cannot be considered "newly discovered evidence." For these reasons alone, this aspect of the Motion for Reconsideration is denied.

In any event, even if the Court were to consider the new advertisements, it would nevertheless find that they are merely cumulative of those already considered in the Motion for Summary Judgment, and that they would have had no material effect on the outcome of that

motion.  First, the Court observes that the Plaintiffs have failed to come forward with adequate evidence that they viewed, much less relied, on any of the particular advertisements contained in Exhibits 3 and 4.  Plaintiff Chris Pappas' affidavit does not specifically identify any of the 41 advertisements as being ones that he actually viewed and considered.  Rather, he asserts only generally that the advertisements as a whole "are similar or the same" as those he saw.  This degree of generality is simply insufficient to support the Plaintiffs' advertising claims.  For example, the Court has no ability to assess the extent of "similar[ity]" between the proffered ads and some unknown ads that were actually seen by the Plaintiffs, despite the fact that determining the precise content of the ads actually seen by the Plaintiffs is critical to the analysis.

Moreover, the Court finds that the representations in the new advertisements do not materially alter the analysis.  The Plaintiffs simply list a number of quotations from the advertisements, but offer little or no explanation as to why those quotes should be considered misleading.[2]  As with the summary judgment motion itself, the Court declines to construct the Plaintiffs arguments for them.  In any event, the representations in these advertisements are, in some cases, identical to those already analyzed by the Court on the summary judgment motions – *e.g.* statements that Azar will "fight just as hard" to get "every dollar you deserve" – and in all other respects, either factually verifiable or are similarly un-actionable statements of opinion or puffery.

_____

[2]Several of the listed quotes could not possibly be considered misleading, at least on the record here.  For example, several quotes consist entirely of a statement that "Frank Azar got me [some specific dollar amount]."  The Plaintiffs do not explain how the statement that Azar obtained a specific recovery for a specific individual is misleading.  Similarly, how the Plaintiffs contend that other statements, such as "I'll help you too, just pick up the phone and call me for free, it's that easy" or "When you're hurt in a car wreck, help is only seconds away," can be considered misleading is somewhat baffling.

Accordingly, the Court declines to reconsider its prior ruling based on any purported "newly discovered evidence."

Next, the Court turns to the Plaintiffs' argument that it applied an incorrect legal standard in considering the CCPA claim. The Plaintiffs argued that, under Colorado law, advertising by attorneys is examined under a more stringent standard than allegedly deceptive advertising claims made by others. In support of this contention, the Plaintiffs cite to *Crowe v. Tull*, 126 P.3d 196 (Colo. 2006). In *Crowe*, the Colorado Supreme Court "conclude[d] that attorneys may be held liable for violations of the CCPA," rejecting an argument that attorneys were absolutely exempt from that Act and also rejecting the contention that "a special test for CCPA liability applies to attorneys." 126 P.3d at 200. The Plaintiffs seize on several paragraphs in which the court rejects the argument that "the attorney-client relationship is always a private contract with no effect on the greater public." 126 P.3d 208. In explaining why it considers this argument unpersuasive, the court states:

> the argument that the scope of damages caused by an attorney who engages in false advertising is defined only by the attorney-client relationship fails in the face of the realities of modern legal practice. Contemporary advertising and marketing practices for attorney services more closely reflect the commercial marketplace as a whole and do not reflect the traditional image of the small-town practitioner hanging up a shingle and relying on personal contacts to create business. Marketing consultants and branding advisors are common tools in legal circles now. Many law firms resemble mid-size corporations rather than the image of small groups of like-minded professionals that still retains some hold on the popular consciousness.
>
> Lawyer advertising today potentially affects a large swath of the public via television, print media, radio, and the internet. It is reasonable that special protections exist for those instances in which attorney marketing representations are falsely conveyed. Such

protections are all the more necessary because the practice of law is complicated and information that allows the average consumer to discriminate among different legal service providers is limited. In many cases, the unsophisticated consumer will have only an attorney's or law firm's own representations of the quality of services with which to decide whether or not to retain that attorney or firm. Frequently, that decision must be made under the added pressure of a fast-running statute of limitations.

Attorney advertising is likely to have the most impact on the unsophisticated and the underprivileged segments of the public that are most in need of safeguards. Lawyers may target these communities because of their susceptibility to advertising. Due to the disparity in sophistication and expertise between an attorney and the typical consumer of legal services, "misstatements that might be overlooked or deemed unimportant in other advertising may be found quite inappropriate in legal advertising."

126 P.3d at 208-09 (citations omitted).

The Plaintiffs cite this passage for the proposition that *Crowe* subjects attorney advertising claimed to be misleading to a more exacting standard than other allegedly deceptive advertising, but as is evident from the quoted language, the court does not say as much. Indeed, the very next sentence – unquoted by the Plaintiffs in their motion – says precisely the opposite: "This potential for consumer targeting demonstrates the need for the <u>same</u> protections against deceptive legal advertising as exist for other purveyors of goods and services." *Id.* (emphasis added). When the court summarizes its holding again in the following paragraph, it makes no mention whatsoever of any heightened standard: "We hold, therefore, that the CCPA applies to protect the vulnerable consumer of legal services and the consumer public as a whole in the situation in which the

purveyor of those services knowingly misrepresents the quality and likely benefit of those services."[3]  *Id.*

Thus, contrary to the Plaintiffs' contention, *Crowe* does not stand for the proposition that attorney advertisements are subjected to any different scrutiny than any other advertiser's representations.  In granting summary judgment, this Court applied the prevailing CCPA standards that apply to <u>all</u> advertisers, attorney and otherwise, and found the challenged Azar advertisements to be non-actionable.  Nothing in *Crowe* compels a different outcome.

The Plaintiffs also rely on two secondary authorities for the proposition that attorney advertising should be judged more strictly than other advertising.  They cite to *Bates v. State Bar of Arizona*, 433 U.S. 350, 383 (1977), for the proposition that attorney advertising claims "are not susceptible to measurement or verification, [and thus] are likely to be misleading as to warrant restriction." *Bates* involved a constitutional challenge to Arizona's regulation of attorney advertising that had been construed by the state to prohibit the plaintiff from advertising "legal services at very reasonable prices."  433 U.S. at 354.  The Court specifically noted that it was not "address[ing] the peculiar problems associated with advertising claims relating to the quality of legal services."  *Id.* at 366.  "Such claims," it explained, were "probably not susceptible of precise measurement or verification and, <u>under some circumstances,</u> might well be deceptive or misleading to the public."  *Id.*  However, it noted that the advertisement at issue in the case did

---

[3]Notably, when the Colorado Supreme Court turned to apply its holding to Crowe's case, it observed that "Crowe's bare bones original complaint only sketches the elements of a CCPA offense," and would need to be amended to "flesh out Crowe's argument that the Azar firm is a 'personal injury mill' using its advertising to deceive the public."  126 P.3d at 211.  Far from purporting to articulate a heightened standard for attorney advertising, it is clear that the *Crowe* case did not specifically weigh or examine any of the particular advertising allegations involved.

not "contain[ ] claims, extravagant or otherwise, as to the quality of services. Accordingly, we leave that issue for another day." *Id.* Thus, *Bates* cannot be read for the proposition that attorney advertising <u>requires</u> greater restriction because (or when) it is "not susceptible of precise measurement or verification"; at best, it stands only for the proposition that this is a concern that might warrant some state regulation of attorney advertising. Nevertheless, this Court notes that *Bates* was specifically cited by the Colorado Supreme Court in the first and last sentences of the above-quoted passage from *Crowe*. If *Bates* could be read to compel a heightened examination of attorney advertising in the CCPA context, the court in *Crowe* would certainly have stated as much.

Finally, the Plaintiffs rely on Colo. R. Prof. Conduct 7.1(a), part of Colorado's ethics code governing attorney advertising. That rule prohibits "a false or misleading communication about the lawyer or the lawyer's services." The Plaintiffs point specifically to commentary interpreting the rule, which suggests that "characterizations of a lawyer's fees as 'cut rate' [or] 'cheap' are likely to be misleading <u>if those statements cannot be factually substantiated</u>. . . . Equally problematic are <u>factually unsubstantiated characterizations of the results</u> that a lawyer has in the past obtained. . . This type of statement, due to the inevitable factual and legal differences between representations is likely to mislead prospective clients." *Id.* (emphasis added). The Court finds this unpersuasive for several reasons. First and foremost, a rule governing attorney ethics has no bearing on whether an advertisement is misleading for purposes of the CCPA. Indeed, this is one of the major points of *Crowe*: "While safeguarding the public against consumer fraud may at times be an ancillary consequence of the disciplinary system, its rules and remedies are not tailored to that specific purpose." *Crowe*, 126 P.3d at 208. To the extent the Plaintiffs

believe that Azar's advertising violations Co. R. Prof. Conduct 7.1(a), they make invoke the appropriate grievance mechanism provided by those rules, not seek to transpose those rules into an entirely separate remedial scheme.

Second, the Court notes that the quoted commentary focuses on "factually unsubstantiated" advertising by the attorney. The Plaintiffs have not alleged that Azar's claims that he would "work hard to get [clients] every dollar they deserve" are "factually unsubstantiated." Indeed, they cannot. For the reasons explained in the Court's summary judgment ruling, such a claim is inherently a statement of <u>intent</u> or <u>opinion</u>, not a statement of fact that is subject to verification. Notably, the Plaintiffs have pointed the Court to no case or opinion interpreting Rule 7.1(a) to render advertising such as that at issue here to be misleading under the Rules of Professional Conduct.

Third, the Court notes that, once again, the Colorado Supreme Court in *Crowe* expressly considered the effect of Rule 7.1(a) in its ruling. 126 P.3d at 207. If Rule 7.1(a) were to warrant imposing a heightened standard on attorney advertising for purposes of the CCPA, the Court in *Crowe* would have said so.

Accordingly, the Court finds that the Plaintiffs' contention that it applied an incorrect standard on the Defendants' summary judgment motion is without merit.

Next, the Plaintiffs argue that the Court erred in finding that, to the extent Azar's statements constitute representations of present intent, the Plaintiffs failed to come forward with evidence demonstrating Azar's contemporaneous intent not to perform as stated. The Plaintiffs argue that they are permitted to rely upon circumstantial evidence to show Azar's lack of a present intent to carry out its promises, and allege that their brief goes "to great lengths to show

defendant Azar does not provide high quality services and cases are settled quickly for less than their actual settlement value in order to generate maximum return for Azar and not its clients." This argument is not premised on newly-discovered evidence, or any assertion that the Court clearly misinterpreted the Plaintiffs' position on summary judgment. Rather, it is simply an attempt to re-argue a point that the Plaintiffs were previously unsuccessful on. Thus, it is not a suitable subject for reconsideration. In any event, having reviewed the entirety of the Plaintiffs' argument on this point, the Court finds nothing in its summary judgment ruling that was error.

Finally, the Plaintiffs argue that the Court erred in dismissing their negligent misrepresentation claim in its entirety, as the Plaintiffs asserted that claim as to both advertising-based misrepresentations by Azar, as well as to misrepresentations made by Defendant Hungerford in the course of her representation of the Plaintiffs. The Court notes that its summary judgment ruling speaks only of "Azar's motion," as Defendant Hungerford did not move for summary judgment. Accordingly, the Court's granting of summary judgment to Azar on the negligent misrepresentation claim has no effect on the Plaintiffs' negligent misrepresentation claim against Defendant Hungerford.

Accordingly, the Plaintiffs' Motion for Reconsideration (**# 259**) is **DENIED** in its entirety.

Dated this 3d day of April, 2008

**BY THE COURT:**

_____

Marcia S. Krieger
United States District Judge