IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 06-cv-01024-MSK-BNB

CHRIS PAPPAS, and
JAMELLA PAPPAS,

Plaintiffs,

v.

FRANK AZAR & ASSOCIATES, P.C., a Colorado professional corporation, and
LISA M. HUNGERFORD,

Defendants.
_____

**ORDER**
_____

This matter is before me on **Defendant Franklin D. Azar & Associates, P.C.'s, Application for Attorney Fees Related to Plaintiff's Motion to Vacate and Nullify the Protective Order** [Doc. # 317, filed 2/29/2008] (the "Motion for Fees"). The Motion for Fees is GRANTED, and defendant Azar is awarded its attorney fees in the amount of $1,851.00, against plaintiffs' counsel.

On June 5, 2007, at the request of the parties, I entered a blanket Protective Order [Doc. # 161] in this case to facilitate discovery through the exchange of confidential information. The Protective Order allows the parties to mark as confidential "information that is confidential and implicates common law and statutory privacy interests of (a) current or former employees of Franklin D. Azar & Associates, P.C.; (b) current or former clients of Franklin D. Azar & Associates, P.C.; or (c) proprietary and/or trade secret information regarding Franklin D. Azar & Associates, P.C., and/or its current or former employees and members." Protective Order at ¶3.

Information marked as confidential may be used only in connection with this case and may be shown only to limited, identified categories of people. Id. at ¶4. In the event materials are improperly designated as confidential, the Protective Order provides a challenge mechanism, as follows:

> A party may object to the designation of particular CONFIDENTIAL information by giving written notice to the party designating the disputed information. The written notice shall identify the information to which the objection is made. If the parties cannot resolve the objection within ten (10) business days after the time the notice is received, it shall be the obligation of the party designating the information as CONFIDENTIAL to file an appropriate motion requesting that the Court determine whether the disputed information should be subject to the terms of this Protective Order. If such a motion is timely filed, the disputed information shall be treated as CONFIDENTIAL under the terms of this Protective Order until the Court rules on the motion. If the designating party fails to file such a motion within the prescribed time, the disputed information shall lose its designation as CONFIDENTIAL and shall not thereafter be treated as CONFIDENTIAL in accordance with this Protective Order. In connection with a motion filed under this provision, the party designating the information as CONFIDENTIAL shall bear the burden of establishing that good cause exists for the disputed information to be treated as CONFIDENTIAL.

Id. at ¶8.

I am informed that documents were produced by Azar pursuant to the Protective Order and marked as confidential, although I am not aware of the volume of the documents marked as confidential or of their nature.

Subsequently, on January 29, 2008, counsel for the plaintiffs filed a motion captioned "Plaintiffs' Motion to Vacate and Nullify the Protective Order" [Doc. # 308] (the "Motion to Vacate Protective Order"). The Motion to Vacate Protective Order contains no citation to any legal authority. It asserts that the defendants in this action have filed suits in various state courts

(1) against the plaintiffs here for fraud, negligent misrepresentation, abuse of process, breach of contract , and civil conspiracy; (2) against the plaintiffs here and their lawyers for civil conspiracy, abuse of process, defamation, and malicious prosecution; and (3) against the plaintiffs' lawyers for intentional interference with contract, slander, and civil conspiracy.  The Motion to Vacate Protective Order also asserts that Azar has asserted counterclaims in certain state court actions brought by former clients of the firm.  Based on these facts, plaintiffs' counsel argue that the Protective Order should be vacated because:

> The claims raised by Defendants' State Court actions require determinations of many facts which arise from the litigation of this case.  Plaintiffs must, therefore, be free to discuss those facts with counsel and others of their choosing in order to defend themselves from the allegations in those cases.  It is impractical, unreasonable, and unlawful to require that Plaintiffs abide by the restrictions of the Protective Order, as such requirement would prevent Plaintiffs from being able to defend themselves in the Nevada and Colorado State Courts.  It is therefore necessary to enter an order permitting Plaintiffs to vacate the Protective Order and reasonable for this Court to enter an order nullifying the Protective Order altogether.

Motion to Vacate Protective Order at ¶9.  Plaintiffs' counsel do not identify a single document subject to the Protective Order and necessary to the defense of one of the ancillary state court actions, however.

The remainder of the arguments advanced by plaintiffs' counsel in support of the Motion to Vacate Protective Order do not go to the merits of the motion at all, but are, in the words of counsel for Azar, "just sort of an opportunity to come in and try to tell the Court that Azar is a bad guy doing all this other stuff. . . ."  Transcript of Proceedings before Boyd N. Boland on

February 20, 2008 [Doc. # 328-3] at p.10 lines 22-24 (hereafter "Trans."). For example,

plaintiffs' counsel include in their argument in support of the Motion to Vacate Protective Order:

> 4. The purpose of the State Court actions which have been filed by the Defendants against Plaintiffs and their counsel is obviously a pretextual effort to intimidate the Plaintiffs and to drive a wedge between them and their counsel in an effort to undermine Plaintiff's ability and willingness to continue with the prosecution of this case.
>
> 5. The timing of Defendants' collateral lawsuits makes this clear. While Defendants could potentially have standing to file a malicious prosecution claim following resolution of this case in their favor, such a claim could not be ripe unless and until Defendants prevailed in this action. Accordingly, *that* would be the proper time for Defendants to assert all of the claims which they may have, yet Defendants have split up their claims in order to file their various State Court Suits as soon as possible.
>
> 6. Defendants' ulterior motives fit an emerging and troubling pattern. In virtually all of the other pending State Court actions against Defendant Franklin D. Azar & Associates, P.C. and related individuals, the Defense has filed counterclaims against Plaintiffs. . . . In addition, Defendant Franklin D. Azar & Associates, P.C. has filed suits against each of the attorneys representing the Plaintiffs in this case. . . .
>
> 7. Notwithstanding the fact that these Defendants are acting in contempt of the honor and dignity of this Court by bringing via State Court action what this Court has already precluded, Defendants continue with their scorched earth strategy which not only chills but does violence to the right and ability of aggrieved Plaintiffs to seek redress in this Court as guaranteed by the United States Constitution.

Motion to Vacate Protective Order at ¶¶4-7.

The plaintiffs' argument suffers from a logical disconnect. On the one hand, plaintiffs' counsel do not contend that the documents designated by the defendants as confidential are not

entitled to that designation or to protection from public disclosure.[1]  Instead, they claim that greater access to the confidential documents is required in order to defend the ancillary state court actions which the defendants have commenced.  However, the natural consequence of the relief plaintiffs' counsel seek through the Motion to Vacate Protective Order is not expanded access, but is instead to make public materials which no one disputes are private, confidential, and among other things contain "proprietary and/or trade secret information regarding Franklin D. Azar & Associates, P.C., and/or its current or former employees and members."

If the plaintiffs and their counsel really need access in the state court actions to the confidential documents produced in this case, the most appropriate procedure would be to request their production through discovery in those state court actions, subject to whatever limitations, if any, the state judges may impose.  So far as I am aware, the plaintiffs and their counsel have not pursued that avenue of relief.

Alternatively, the confidential materials could continue to be withheld from public disclosure but the parties could agree that the confidential information may be disclosed as necessary to parties, lawyers, and experts in the ancillary state court actions.  I suggested such an approach during argument on the Motion to Vacate Protective Order, as follows:

> [R]ather than saying nothing is confidential, is it possible to
> expand the meaning of who can see confidential documents to all
> lawyers, experts, and court personnel in the following identified
> lawsuits and then identify those suits where you think it's
> necessary?

---

[1] To the contrary, plaintiffs' counsel argue that invoking the challenge mechanism contained in the Protective Order would have been ineffective in addressing the problem. Plaintiffs' Objection to . . . Application for Attorney Fees [etc.] [Doc. # 328, filed 3/20.2008] (the "Objection") at p.2.

Trans. at p.5 lines 19-24.  The defendants agreed to such a proposal:

> THE COURT [to Mr Levy, counsel for Azar]: So let me ask you. Would you oppose expanding the scope of who may see documents marked as confidential in this case to include lawyers, clients, and experts in the Nevada lawsuit against the Pappases and the lawsuits against Mr. Winston and his firm and Mr. LeHouillier and his firm?
>
> MR. LEVY:   No.

Id. at p.14 line 21 through p.15 line 2.

In their Objection [Doc. # 328], plaintiffs' counsel claim that they "did not reject the Court's suggestion," but a fair reading of their response, twice stated at argument, is to the contrary:

> MR. WINSTON:   Your Honor, I think that may work, but I think that there may be expansion of other cases that may come up that will be filed relating to these issues, and I think that also we have a case in Nevada, and I'm not sure how that would work with this case, and I also believe that there will be problems with witnesses. And also this case is probably going to be tried sometime in September.  I assume that some of these issues are going to travel past that time when the case is over with this court but the protective order will still be in place, so there will be active litigation and people seeking relief from the protective order.

Trans. at p.5 line 25 through p.6 line 11.  And later:

> THE COURT:   Yeah, but if you get to use in the lawsuit against you--
>
> MR. WINSTON:   Correct.
>
> THE COURT:   --the documents that are confidential in this case--
>
> MR. WINSTON:   Correct.
>
> THE COURT:   --why isn't that good enough?
>
> MR. WINSTON:   Because we believe that there will be other--

> additional attorneys involved in the case, different--counterclaims for the various plaintiffs and counterclaims for various counsel that are going to expand the litigation and there are going to be lots and lots of experts. My concern is that there's just going to be a large burden on this court because there are going to be many, many people filing motions to have relief from the protective order and when this case is over with [in] this court those motions are going to keep coming in.

Id. at p.17 line 10 through p.18 line1.

Nothing in the Motion to Vacate Protective Order or in the arguments of counsel addressed the central issue of why it is appropriate to make public materials which indisputably are private, confidential, and which contain proprietary and/or trade secret information, merely because the defendants have commenced actions against the plaintiffs and their lawyers. The need to maintain the materials confidentially from public disclosure remains. Plaintiffs' counsel stubbornly refused to address this issue.

I denied the Motion to Vacate Protective Order because of the logical disconnect in the argument of plaintiffs' counsel for the relief requested. In doing so, I found that the motion was unfounded, unsupported, and illogical. Order [Doc. # 328-3] at p.18 lines 7-11. I find also that plaintiffs' counsel did not, at all, file the Motion to Vacate Protective Order for the purpose of obtaining access and use of the confidential materials in the ancillary state court actions. If that had been their purpose, they would have agreed to the alternative relief suggested. To the contrary, the motion was brought for the improper purpose of attempting to besmirch in the eyes of the court the reputations of the defendants and their counsel. In doing so, plaintiffs' counsel unreasonably and vexatiously multiplied the proceedings in this action.

In addition, I found that the Motion to Vacate Protective Order was merely the latest in a troubling series of motions by plaintiffs' counsel which lacked any merit and were without any factual or legal support. Trans. at p.18 lines 8-21. In particular, on August 29, 2007, plaintiffs' counsel filed a motion captioned Plaintiffs' Motion for Sanctions and for Information Relating to the Identity of Those Representatives of Defendants Who Engaged in Unethical Conduct [Doc. # 227] (the "August 29 Motion"). The August 29 Motion alleged that "[a] representative of Defendants in the subject case contacted the Department of Social Security and requested an investigation or prosecution of Plaintiff Gloria Pappas to place, alleging Plaintiff Gloria Pappas was engaged in Social Security Fraud." Id. at p.1. As sanctions, the plaintiffs sought (1) that defendants be compelled to identify the individuals who filed the complaint with the Social Security Administration; (2) an award of fees incurred in bringing the motion; (3) an order "barring [d]efendants at trial from arguing or mentioning [p]laintiff engaged in any type of Social Security Fraud"; (4) a fine against the defendants; and (5) an order striking all defenses relating to any fraudulent conduct by plaintiffs. Id. at p.3. The August 29 Motion was completely conclusory and lacked any factual evidence whatsoever. I denied it, finding:

> The plaintiffs offer no evidence (as distinguished from unsubstantiated argument of counsel) that the Social Security Administration ("SSA") was contacted by an outside witness or complainant; no indication of who they believe contacted SSA beyond the generality of a "representative" of the defendants; no evidence supporting the assertion that the defendants had anything to do with any such contact, if it occurred; nothing to support their claim that the contact, it there was any, was by or under the direction of a lawyer subject to the Colorado Rules of Professional Conduct; no evidence that the contact, if there was any, was made

> "solely to obtain an advantage in a civil matter"; and no evidence
> that SSA conducted any kind of investigation.

Order [Doc. # 296, filed 11/27/2007].

Similarly, on October 1, 2007, the plaintiffs filed Plaintiffs' Motion for Sanctions for Abusive Discovery Conduct [Doc. # 256] (the "October 1 Motion") requesting that I "admonish" Azar's counsel for abusive discovery conduct. The plaintiffs provided no authority for the requested sanction, and I denied the request. Order [Doc. # 296] at p.17.

Both the August 29 Motion and the October 1 Motion, like the Motion to Vacate Protective Order under consideration here, were filed by plaintiffs' counsel not because they presented any serious claim for the relief sought, but instead in an apparent attempt to diminish the credibility of the defendants and their counsel in the eyes of the court. I find under these facts, and particularly in view of the repeated nature of the filings, that plaintiffs' counsel was engaged in bad faith litigation tactics which unreasonably and vexatiously multiplied the proceedings.

Section 1927, 28 U.S.C., provides for the award of sanctions in the form of attorney fees and costs under the circumstances presented here:

> Any attorney or other person admitted to conduct cases in any
> court of the United States or any Territory thereof who so
> multiplies the proceedings in any case unreasonably and
> vexatiously may be required by the court to satisfy personally the
> excess costs, expenses, and attorneys' fees reasonably incurred
> because of such conduct.

The Tenth Circuit Court of Appeals recently applied section 1927 in <u>Hamilton v. Boise Cascade Express</u>, 519 F.3d 1197, 1202 (10th Cir. 2008), stating:

9

> We have held that § 1927 does not require a finding of bad faith: "Although subjective good faith on the part of a non-attorney party appellant may in some instances excuse otherwise unreasonable conduct, we are entitled to demand that an attorney exhibit some judgment. To excuse objectively unreasonable conduct by an attorney would be to state that one who acts with 'an empty head and a pure heart' is not responsible for the consequences." Braley v. Campbell, 832 F.2d 1504, 1512 (10th Cir. 1987). . . . So any conduct that, "viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court," is sanctionable. Id.
>
> While the conduct engaged in here by the plaintiffs' counsel may not be shocking, I have found it to be abusive:
>
>> [S]anctions are not reserved for the worst offenders. This is particularly true of sanctions under § 1927, which . . . are levied to compensate the victims of dilatory practices, not as a means of punishment. . . . Sanctions may be appropriate, rather, in response to "*objectively* unreasonable" conduct. Braley, 832 F.2d at 1512 (emphasis added). Where, "pure heart" notwithstanding, an attorney's momentary "empty head" results in an objectively vexatious and unreasonable multiplication of proceedings at expense to his opponent, the court may hold the attorney personally responsible. Id.

Hamilton, 519 F.3d at 1203.

In calculating the amount of the sanction under section 1927, I may apply either a lodestar calculation or I may award "attorney's fees reasonably incurred." Id. at 1206-07. The fees requested here are appropriate under either approach. I have carefully reviewed Azar's fee application and the affidavit and contemporaneous time records submitted in support of it. I find that the time billed to responding to the Motion to Vacate Protective Order and attending the hearing on that motion, totaling 7.1 hours, is reasonable and appropriate. Three lawyers worked on the response, at billing rates ranging from $210 to $300 per hour. The rates are well within those charged in metropolitan Denver for services of this nature. Regardless, the amount was

10

actually expended responding to the Motion to Vacate Protective Order, and may be awarded for that reason alone. Id. at 1206-07.

IT IS ORDERED that **Defendant Franklin D. Azar & Associates, P.C.'s, Application for Attorney Fees Related to Plaintiff's Motion to Vacate and Nullify the Protective Order** [Doc. # 317] is GRANTED, and defendant Azar is awarded its attorney fees in the amount of $1,851.00, against plaintiffs' counsel. Plaintiffs' counsel shall make payment within ten days of this order.

Dated May 2, 2008.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge